**Gail SIDNEY–VINSTEIN, Plaintiff-Appellant-Cross Appellee**

v.

**A.H. ROBINS COMPANY, Hugh J. Davis, Irwin S. Lerner, Defendants-Appellees**

and

**Pee Wee Molding Corporation, Defendant-Appellee-Cross Appellant.**

No. 81–4118.

United States Court of Appeals, Ninth Circuit.

Submitted July 12, 1982.

Decided Jan. 28, 1983.

\*   \*   \*   \*   \*   \*

Steven J. Brewer, Conklin, Davids & Friedman, San Francisco, Cal., for plaintiff-appellant-cross appellee.

Thomas W. Kemp, Barbara L. Gately, Washburn & Kemp, San Francisco, Cal., argued, Kevin Dunne, Sedgwick, Detert, Moran & Arnold, San Francisco, Cal., on brief, for defendants-appellees.

Before WISDOM * and MERRILL, Senior Circuit Judges, and CHOY, Circuit Judge.

WISDOM, Circuit Judge:

This is a diversity case. It involves negligence and products liability, and other claims arising out of injuries the plaintiff, Gail Sidney-Vinstein, suffered in 1973 through the use of the Dalkon Shield, an intrauterine contraceptive device (I.U.D.). She filed her complaint in November 1979, and the district court granted summary judgment for the defendants on December 10, 1980, relying on California's one-year statute of limitations for tort actions, Cal. Civ.Proc.Code § 340(3).

This appeal is from the striking of a motion for reconsideration of the order granting the defendants' motion for summary judgment and the order granting the motion for summary judgment in favor of the defendants, Hugh D. Davis, Irwin Lerner, A.H. Robins Co. and Pee Wee Molding Corp., inventors and manufacturers of the Dalkon Shield. We hold that the plaintiff's motion for reconsideration was proper and that the district court did not commit reversible error by striking that motion or in granting the defendant's motion for summary judgment. Accordingly, we affirm.

### I. Statement of the Case

In July 1972, the plaintiff, Gail Sidney-Vinstein, used the Dalkon Shield for contraceptive purposes. In February 1973, the plaintiff learned that she had become pregnant while the I.U.D. was in place. On the advice of her physician that a pregnancy would be very dangerous, the plaintiff underwent a therapeutic abortion in March 1973. Shortly after the abortion, the plaintiff began suffering cramps, fever, and other complications. Examination revealed that the plaintiff's uterus was severely infected, and on the advice of physicians, she underwent a complete abdominal hysterectomy. The surgeon discovered the Dalkon Shield imbedded in her uterus.

Immediately after the hysterectomy, the plaintiff's physician informed her that the Dalkon Shield had perforated her uterus. The plaintiff testified at her deposition that she understood immediately after the hysterectomy that the Dalkon Shield had caused the infection, that it had not done what it was designed to do, and that intrauterine devices are not supposed to cause perforations:

Q. ... [Y]our understanding was that the I.U.D. had perforated the uterus?

A. (Nodding affirmatively).

---

* The Honorable John Minor Wisdom, Senior Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation.

Q. And that that is what had caused the infection, is that right?

A. Yes.

\* \* \* \* \* \*

Q. But you knew immediately after the therapeutic abortion that the I.U.D. had still been inside you because [your physician] had told you so?

A. At that point I knew it was there.

Q. That's the point I'm talking about, immediately after your hysterectomy.

A. Okay.

Q. You knew that the I.U.D. hadn't done what it was designed to do and that is preventing pregnancy, right?

A. Right.

\* \* \* \* \* \*

Q. You knew from what [your physician] told you that the I.U.D. had perforated your uterus, right?

A. Yes.

\* \* \* \* \* \*

Q. And you knew that perforating uteruses was not something that I.U.D.'s were supposed to do, right?

A. Yeah.

\* \* \* \* \* \*

Q. Since your conversation with [your physician] while you were hospitalized for your hysterectomy, have you learned anything further about what caused your infection?

A. No.

The plaintiff has not suffered any related illnesses since the time of her hysterectomy.

In May 1974, the defendants warned physicians of a possible tie between use of the Dalkon Shield and septic spontaneous abortions. In June 1974, under pressure from the Food and Drug Administration, the defendants suspended marketing of the Dalkon Shield in the United States.

In May or June of 1979, the plaintiff learned that the Dalkon Shield had been removed from the market and that it was the subject of numerous suits against its manufacturer alleging that the device had been faulty and ineffective. In November 1979, the plaintiff filed a complaint against the manufacturer of the Dalkon Shield, A.H. Robins Company, its inventors and promoters, Hugh Davis and Irwin Lerner, and the manufacturer of one of its components, Pee Wee Molding Corp. Her complaint advanced theories of negligence, strict products liability, breach of express warranty, civil conspiracy, and fraud.

In November 1980, the defendants filed a motion for summary judgment averring that California's one-year statute of limitations barred the plaintiff's claim. The district court granted the motion for summary judgment finding no material dispute concerning the applicability of the one-year statute of limitations to any of the claims other than that for negligence. The district court addressed two arguments raised by the plaintiffs to circumvent the one-year limitations period as applied in negligence cases. The first argument was that California's "discovery rule"[1] tolled the statute of limitations until the plaintiff learned that she had a cause of action. According to the plaintiff, she did not discover that she had a cause of action until she was informed in 1979 that the Dalkon Shield was defective. The plaintiff also argued that the defendants had fraudulently withheld information that would have induced her to sue, and that this fraud tolled the statute.

The district court rejected both arguments. Regarding the California discovery rule, the district court reasoned that the statutory period begins to run as soon as

---

1. California recognizes an exception to the rule that the statute of limitations begins to run when the injury occurs.

Generally, a personal injury claim accrues and the period of limitations commences when a wrongful act takes place. An exception is presented when the pathological effect occurs without perceptible trauma and the victim is "blameless by ignorant" of the cause of injury; in that case the statute of limitations does not begin to run until the person knows or, by the exercise of reasonable diligence, should have discovered the cause of injury.

*G.D. Searle & Co. v. Superior Court,* 49 Cal. App.3d 22, 25, 122 Cal.Rptr. 218, 220 (1975).

the plaintiff has obtained sufficient information to put a reasonable person on notice of the possible origin of the alleged injury. Relying on the plaintiff's deposition testimony, the district court found that she should be charged with having knowledge in 1973 of the causal connection between her injuries and the Dalkon Shield. Citing the absence of any evidence that the defendants had attempted to conceal facts in an effort to hinder plaintiff from prosecuting her claim, the district court also dismissed the plaintiff's second argument for extending the limitations period.

Following summary judgment, the plaintiff timely filed a motion to reconsider the court's order granting summary judgment. Stating that "there is nothing new and different in this matter that was not considered by the court and passed upon previously", the district court denied the plaintiff's motion. Trial Transcript at vol. 4, p. 3. The district court granted the defendant's motion to strike the plaintiff's motion to reconsider apparently on the ground that the motion to reconsider was an improper attempt to augment the record on appeal.[2]

The plaintiff bases her appeal on two issues. First, she asserts that the California statute of limitations does not operate as a bar to her claims for relief. Second, the plaintiff argues that the trial court erred in striking her motion to reconsider the court's order granting summary judgment.

## II.

### Statute of Limitations

■ Under F.R.Civ.P. 56(e), summary judgment is proper only where there is no genuine issue of any material fact or where, viewing the evidence in a light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law. *Dalke v. Upjohn Co.*, 555 F.2d 245, 248 (9th Cir.1977). Our role in reviewing a grant of summary judgment is to determine whether there is any genuine issue of material fact underlying the adjudication and, if not, whether the substantive law was correctly applied. *Yazzie v. Olney, Levy, Kaplan & Tenner,* 593 F.2d 100, 102 (9th Cir. 1979).

The plaintiff does not dispute the applicability of a one-year statute of limitations to her claims. She contends, however, that under the "discovery rule", the statute begins to run not upon discovery of the physical cause of the injury but upon the discovery that tortious conduct may have been involved. In addition, the plaintiff argues that the defendants' fraudulent concealment of facts from her relating to the effectiveness and safety of the Dalkon Shield prevented her from bringing suit within the one-year period. We find no merit in these contentions.

In *Davis v. United States,* 642 F.2d 328 (9th Cir.1981), *cert. denied,* 455 U.S. 919, 102 S.Ct. 1273, 71 L.Ed.2d 459 (1982), this Court considered a factual setting analogous to that in the instant case.[3] In *Davis,* the plaintiff suffered severe side effects following the injection of an allegedly defective vaccine. Although the *Davis* plaintiff was aware in 1963 that the vaccine was the likely cause of his injury, he brought the

---

**2.** The trial court's order striking the plaintiff's motion to reconsider did not include the reasons relied on by the judge. The only reference to the matter in the trial transcript is a brief exchange that occurred after the court had denied the motion to reconsider:

[Defendant's counsel]: Your honor, we also have a motion to strike their motion on the grounds that it is an improper attempt to augment the record on appeal.
The Court: Motion granted.
[Defendant's counsel]: Thank you, your honor.
[Plaintiff's counsel]: Your honor, we can't augment our record.

The Court: Not in this method. You can petition the circuit to augment the record, but this is doing it in the back door.

**3.** In *Davis,* this Court explored the effect of the discovery rule and the fraudulent concealment doctrines as they applied to a federal statute of limitations. Although California law controls here, the *Davis* analysis is consistent with the analyses of California courts construing California statutes of limitations. *See, e.g., Sanchez v. South Hoover Hospital,* 18 Cal.3d 93, 132 Cal.Rptr. 657, 553 P.2d 1129 (1976); *Graham v. Hansen,* 128 Cal.App.3d 965, 180 Cal. Rptr. 604 (1982); *Gray v. Reeves,* 76 Cal. App.3d 567, 142 Cal.Rptr. 716 (1978).

suit at issue in 1973 when he learned of some test results that indicated the vaccine was unsafe. The *Davis* plaintiff argued that the limitations period had not run because he did not learn of the vaccine's possible defects until 1973. He also contended that the defendant had fraudulently concealed the adverse test results. In affirming the trial court's grant of the defendant's motion for summary judgment, this Court stated:

> In the absence of fraudulent concealment it is plaintiff's burden, within the statutory period, to determine whether and whom to sue. Once a plaintiff knows that harm has been done to him he must, ... determine within the period of limitations whether to sue or not, which is precisely the decision that other tort plaintiffs must make.... [F]ailure of the [defendant] to ascertain and publish the fact of its negligence is hardly sufficient to constitute fraudulent concealment.

*Id.* at 331–32.

In the case at hand, the plaintiff admits in her deposition that she knew in 1973 that the Dalkon Shield had perforated her uterus and caused an infection. She also states that she knew the device had not worked as intended. As in *Davis*, the plaintiff was aware of her injury and its cause shortly after the injury occurred. Assuming that

the defendants did attempt to hide the defective nature of their product from the plaintiff, that concealment necessarily ended in 1974 when the defendants warned physicians of the possible danger associated with the Dalkon Shield and removed the product from the market.[4] Thus, we find that, at the very latest, the limitations clock began to run in 1974.[5]

## III.

### The Motion to Reconsider

The plaintiff urges on appeal that the district court erred in striking from the record the plaintiff's motion to reconsider the Court's order granting summary judgment. In support of this contention, the plaintiff argues that F.R.Civ.P. 59(e) provides statutory support for a motion to reconsider,[6] that F.R.Civ.P. 12(f)[7] is inapplicable to a motion to reconsider, and that the motion to reconsider was supported by sufficient additional evidence to render the district court's grant of the motion to strike erroneous. The plaintiff did not question the district court's denial of the motion to reconsider.

The defendant's response to the plaintiff's arguments is that this Court has no jurisdiction to consider the district court's order to strike the motion to reconsider,

4. The only evidence of concealment after 1974 provided by the plaintiff is an allegation that the defendants never recommended that women stop using the Dalkon Shield and statements of officers of A.H. Robins opining that the device was safe and effective. Even assuming these facts to be true, the plaintiff was in no way hindered by such action (or lack of action) from filing a complaint. *See Pashley v. Pacific Elec. Ry. Co.,* 25 Cal.2d 226, 231, 153 P.2d 325, 328 (1944). Thus, the evidence viewed in a light most favorable to the appellant falls far short of the fraudulent concealment that would require tolling of the statute of limitations.

5. The plaintiff's reliance on the recent California Supreme Court case, *Brown v. Bleiberg,* 32 Cal.3d 426, 186 Cal.Rptr. 228, 651 P.2d 815 (1982), is misplaced. In *Brown,* the court found that reasonable minds could differ on the question whether the plaintiff could have discovered the cause of her foot injury during the limitations period. *Id.,* at 434, 186 Cal.Rptr. at 231, 651 P.2d at 818. Mrs. Brown's physician

had actively misled her regarding the nature of her injuries at the time of her operation. That case is readily distinguishable from the one under consideration here. Mrs. Sidney-Vinstein knew at the time of her abortion that the Dalkon Shield was to blame for her injuries.

6. F.R.Civ.P. 59(e) states, "[a] motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment."

7. F.R.C.P. 12(f) provides:
   Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon him or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

because the plaintiff did not comply with F.R.App.P. 3(c)[8] when she failed to designate the striking order as part of the judgment appealed from in her Notice of Appeal. The defendants also question the appealability of an order striking a motion to reconsider. Finally, the defendants argued that F.R.Civ.P. 59(e) does not provide statutory authority for the motion to reconsider, that the motion to reconsider included immaterial, redundant, and inadmissible matters that require striking under F.R.Civ.P. 12(f), that the motion to reconsider raised new matters not before the district court at the original hearing, that the motion for reconsideration was a sham, and that it failed to detail "with particularity" the relief sought and the grounds therefor, as required by F.R.Civ.P. 7(b).[9]

■ The Federal Rules of Civil Procedure specifically allow postjudgment motions to alter or amend a judgment. F.R. Civ.P. 59(e). The motion may take the form of a motion for reconsideration. *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,* 690 F.2d 1240, 1248 (9th Cir.1982). That a motion for reconsideration relates to an order granting summary judgment does not relieve the district court of its responsibility to hear the motion. *Id.* Furthermore, an order denying a motion to reconsider is subject to review on appeal. *Stephenson v. Calpine Conifers II, Ltd.,* 652 F.2d 808, 811 (9th Cir.1981); *Walker v. Bank of America National Trust & Savings Ass'n,* 268 F.2d 16, 25 (9th Cir.), *cert. denied,* 361 U.S. 903, 80 S.Ct. 211, 4 L.Ed.2d 158 (1959).

■ The trial court here not only denied the plaintiff's motion but also granted the defendants' motion to strike the plaintiff's motion. Presumably, the effect of granting the defendants' motion to strike would be to delete from the record both the motion to reconsider and all supporting briefs and evidentiary exhibits. The argument that such deletion is necessary to keep the plaintiff from improperly augmenting the record for appeal has no merit.

A movant's right to appeal from an order denying a motion is worth little if the denying judge can strike the motion from the record altogether. Approval of the district court's action would establish a procedure that, if abused, could shield erroneous district court orders from review. We hold that F.R.Civ.P. 12(f) should not be construed as allowing this undesirable result.

Rule 12(f) provides that "the court may order stricken from any *pleading* any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter". (emphasis added.) Under the express language of the rule, only pleadings are subject to motions to strike. The appellees have cited no cases that have construed F.R.Civ.P. 12(f) as allowing a district court to strike material not contained in the pleadings of the case.

An order striking a motion to reconsider is necessarily a post judgment decision. Since the function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial, striking a motion to reconsider fails to comply with the policies underlying F.R.Civ.P. 12(f). *See Anchor Hocking Corp. v. Jacksonville Elec. Authority,* 419 F.Supp. 992, 1000 (M.D.Fla.1976); ¶ A. J. Moore, Moore's Federal Practice ¶ 12.21[l] (1982). We hold, therefore, that

**8.** Rule 3(c) of the Federal Rules of Appellate Procedure provides:

(c) Content of the Notice of Appeal. The notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken.... An appeal shall not be dismissed for informality of form or title of the notice of appeal.

**9.** F.R.Civ.P. 7(b) provides:

(1) An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion.

(2) The rules applicable to captions, signing, and other matters of form of pleadings apply to all motions and other papers provided for by these rules.

the district court erred in striking the plaintiff's motion to reconsider.

Although we find error in the trial court's order striking the plaintiff's motion, we also find that that order was harmless error.[10] Since the trial court considered the plaintiff's motion to reconsider along with the supporting briefs and evidentiary exhibits and denied the motion before striking it, the order striking the motion to reconsider had no detrimental effect on the plaintiff. Had we affirmed the trial court's striking order, the plaintiff would not have the benefit of the evidence submitted in support of her motion to reconsider. To avoid that undesirable result, we considered that evidence in arriving at our conclusion that the trial court was correct in ruling that the statute of limitations had run.

The plaintiff has not questioned, and we see no reason to decide, the propriety of the district court's denial of the plaintiff's motion to reconsider. Our holding of harmless error renders consideration of the defendant's other arguments unnecessary. AFFIRMED.

---

**10.** The harmless error rule contained in 28 U.S.C. § 2111 provides:

On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties.