Robert E. KENNEDY, Jr.; Joyce Kennedy, Plaintiffs-Appellees,

v.

CITY OF CLEVELAND, et al., Defendants,

William T. Hanton (85–3819), Frank Wszelaki (85–3827), Defendants-Appellants.

Nos. 85–3819, 85–3827.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 3, 1985.

Decided July 30, 1986.

Rehearing Denied Aug. 27, 1986.

Charles T. Riehl, argued, Mary G. Balazs, Walter, Haverfield, Buescher & Chockley, Irving Berger, argued, Asst. Director of Law, Cleveland, Ohio, for defendants-appellants.

Roger D. Heller, Theodore E. Meckler, argued, Christopher D. Stanley, Cleveland, Ohio, for plaintiffs-appellees.

Before ENGEL, KEITH and MILBURN, Circuit Judges.

ENGEL, Circuit Judge.

The Supreme Court in *Mitchell v. Forsyth*, —— U.S. ——, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), held that a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an immediately appealable "final decision" within the meaning of 28 U.S.C. § 1291 [1] notwithstanding the absence of a final judgment. These consolidated appeals raise important issues concerning whether the right to take an immediate interlocutory appeal is conditioned upon the filing of a timely notice and further whether the right itself can be subject to waiver for noncompliance with reasonable temporal limitations placed by the district court upon the filing of motions seeking immunity.

We answer both questions in the affirmative.

## I.

With respect to the right to take an immediate appeal prior to trial, the Supreme Court in *Mitchell* extended to the holders of qualified immunity the same rights it had previously accorded individuals who claimed absolute immunity. *Mitchell*, 105 S.Ct. at 2815–16. In principle, the Supreme Court held that absolute or qualified immunity, once established, not only protects the holder against ultimate personal liability in damages but also from the onerous burdens of defense in much the same way that the Double Jeopardy Clause and the Speech and Debate Clause afford immunity from prosecution.

The conception animating the qualified immunity doctrine as set forth in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct.

---

1. Section 1291 provides, "The courts of appeals ... shall have jurisdiction of all final decisions of the district courts of the United States...."

2727, 73 L.Ed.2d 396 (1982), is that "where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of consequences.'" *Id.*, at 819, 102 S.Ct. at 2738, quoting *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967). As the citation to *Pierson v. Ray* makes clear, the "consequences" with which we were concerned in *Harlow* are not limited to liability for money damages; they also include "the general costs of subjecting officials to the risks of trial—distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Harlow*, 457 U.S. at 816, 102 S.Ct. at 2737. Indeed, *Harlow* emphasizes that even such pretrial matters as discovery are to be avoided if possible, as "[i]nquiries of this kind can be peculiarly disruptive of effective government." *Id.*, at 817, 102 S.Ct. at 2737.

*Mitchell*, 105 S.Ct. at 2815. As both *Mitchell* and *Harlow* make clear, a claim of immunity raises an interest in an early, and inexpensive, termination of the litigation.

*Mitchell v. Forsyth*, as we read it, counsels the trial courts to consider three different and relatively independent aspects of immunity. In addition to the historic right to be immune from ultimate liability in damages, *Mitchell* contemplates two stages at which the doctrine of immunity may be interposed in advance of trial to avoid two distinct burdens of litigation. A defendant may initially raise immunity as a bar to litigation in a motion to dismiss. Where a defendant official is entitled to qualified immunity the plaintiff must plead facts which, if true, describe a violation of a clearly established statutory or constitutional right of which a reasonable public official, under an objective standard, would have known. The failure to so plead precludes a plaintiff from proceeding further, even from engaging in discovery, since the plaintiff has failed to allege acts that are outside the scope of the defendant's immunity.[2] *Mitchell*, 105 S.Ct. at 2816. Next, *Mitchell* holds that "even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a general issue as to whether the defendant in fact committed those acts." *Id.*[3]

 Therefore, it is possible that the progress of civil rights actions brought under 42 U.S.C. § 1983 may be interrupted by not one but two interlocutory appeals. First, if the pleading itself is insufficient the defendant may file a motion to dismiss and upon denial thereof take an immediate appeal. Because *Mitchell* contemplates that the defendant is to be also protected from the burdens of discovery until the resolution of that issue, *Mitchell* necessarily holds that the court is further obligated, upon application, not only to refrain from proceeding to trial but to stay discovery until that issue is decided. 105 S.Ct. at 2816; *see also Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. If the complaint sufficiently alleges actions outside the scope of the official's immunity, the defendant still retains the right to file a motion for summary judgment so that the further harassment of going to trial may be avoided. If, however, summary judgment predicated on

---

**2.** The rules permitting notice pleading and granting the liberal use of amendments are not otherwise affected by our ruling. *See* Fed.R. Civ.P. 8(f), 12(b)(6); *Ott v. Midland Ross Corp.*, 523 F.2d 1367 (6th Cir.1975); *see also Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir. 1976); Fed.R.Civ.P. 15; *Howard v. Kerr Glass Mfg. Co.*, 699 F.2d 330 (6th Cir.1983).

**3.** The same, of course, holds true where a plaintiff either fails to allege violations inside the scope of a defendant official's absolute immunity, or alleges the commission of such violations but, after discovery, fails to raise a genuine issue of fact as to whether the defendant committed those acts. *See Nixon v. Fitzgerald*, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982); *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

a claim of immunity is denied, it is once more possible to appeal from an adverse ruling on the Rule 56 motion and to obtain a stay of trial pending a resolution of that issue on appeal. Finally, if summary judgment is denied and the trial court's decision is not appealed, or is appealed and affirmed, the case then proceeds to trial. *Mitchell* makes it clear that the immunity doctrines' protections against liability and against the various burdens of litigating insubstantial claims are conceptually distinct. *Mitchell*, 105 S.Ct. at 2816. Consequently, decisions with respect to dismissal or summary judgment, if adverse, do not preclude the interposition of the defense of immunity as a defense to liability on the merits.

All interlocutory appeals, whether as exceptions to the finality rule as in 28 U.S.C. § 1292 or within the collateral order doctrine of *Cohn v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), are of course subject to abuse. Even when employed in good faith, these rules are bound to create delay and inconvenience both to the plaintiff and to the court. We see no reason, therefore, why such rules, as advantageous as they may be, are not subject to the same rules of waiver and procedural default as have been traditionally applied to other cases.

■ We note in the first instance that neither absolute nor qualified immunity is recognized so much as a matter of inherent right in the person claiming it as it is the result of the application of historical principles which reflect a proper balance between the protection of the rights of individuals to be free from constitutionally violative harm and the very real need of persons charged with governmental duties to get on with its business without harassment or intimidation.[4] We also note that

immunity, whether qualified or absolute, is an affirmative defense which must be affirmatively pleaded; it is not a doctrine of jurisdictional nature that deprives a court of the power to adjudicate a claim. *Mitchell*, 105 S.Ct. at 2816; *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Harlow*, 457 U.S. at 815 n. 24, 102 S.Ct. at 2736 n. 24. Since immunity must be affirmatively pleaded, it follows that failure to do so can work a waiver of the defense. And since certain of the interests protected by the doctrines of immunity are conceptually distinct, and all of them are procedurally distinct, the failure to plead immunity may, at different stages of the litigation, work either a partial or complete waiver. Hence, we conceive it possible that one might assert immunity as an affirmative defense to the complaint and thus as an affirmative defense to ultimate liability without putting in issue his or her right to be free of subjection to trial or, before that, to the burdens of discovery.

■ It also follows that the right is one which can be lost by failure timely to assert it.[5] In this respect we believe that, to maintain control of his docket and to assure the expeditious advancement of cases, it is entirely proper for a trial judge in such cases as this to establish a time for the filing of motions challenging the sufficiency of the pleadings, during which discovery will be stayed unless good cause can be shown to the contrary. *See In re Paper Antitrust Litigation*, 685 F.2d 810, 817–18 (3d Cir.1982). Plainly, if the trial judge places reasonable limits upon the time within which to challenge the sufficiency of the pleadings, the failure of the defendant to take advantage of the opportunity can and should normally work a waiver of the right, at least absent some appealing reason for making an exception. In like fashion

---

4. We recognize also that some immunity, most notably the President's absolute immunity for all acts within the outer perimeter of his duties of office, arises in part from constitutional grounds. *See Nixon v. Fitzgerald*, 457 U.S. 731, 748–54, 102 S.Ct. 2690, 2700–03, 73 L.Ed.2d 349 (1982) (separation of powers element to presidential immunity).

5. Even the exercise of constitutional rights may be limited by procedural rules. *See, e.g., Wainright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Lockett v. Arn*, 740 F.2d 407, 410 (6th Cir.1984); *Barker v. Ohio*, 328 F.2d 582, 584 (6th Cir.1964).

judges have historically been allowed to limit both the extent and the time for taking discovery. Limitations upon discovery are a common and necessary part of limiting the cost to the parties and assuring the orderly progression of the case to trial. Thus, it is also entirely proper for courts in cases such as this, to fix reasonable times for the completion of discovery and thereafter reasonable times in which motions for summary judgment are to be filed.[6] Given this, it seems logical to us also that the trial judge retains discretion not only to set cut off dates for recovery but to cut off motions for summary judgment, even those which may challenge the plaintiff's right to go to trial on the basis of an absolute or qualified immunity. The quid pro quo is obvious: in exchange for the defendant's right to interrupt the judicial process, the court may expect a reasonable modicum of diligence in the exercise of that right.

By the same token, once it is determined that a given order is appealable under law, we see no good reason for not imposing the same temporal limitations that are applicable generally to the perfection of appeals. Thus, if the order is appealable at all, it must be appealed within the time set by law, here thirty days, or the right must be considered to have been waived. Fed.R. App.P. 4(a); *Moorer v. Griffin*, 575 F.2d 87, 89 (6th Cir.1978). As with other appeals, there are of course certain permissible exceptions which we address later, but we observe that they are no greater nor less than those accorded appeals from final orders generally. Thus, motions for reconsideration must themselves ordinarily be timely filed in order to interrupt the passage of the thirty day time for appeal. *Browder v. Director, Dept. of Corrections*, 434 U.S. 257, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978). And the filing of an untimely motion will not toll that time. Motions brought under Rule 60(b) are likewise subject to limitation, and the untimely filing of those motions deprives the trial court and appellate court of the jurisdiction to entertain them. *Bank of Cal., N.A. v. Arthur Anderson & Co.*, 709 F.2d 1174, 1176 (7th Cir.1983). Similarly, motions for an extension of time to appeal must be timely. *Pryor v. Marshall*, 711 F.2d 63 (6th Cir. 1983). While awkward, such rules bring certainty to the litigation and, as applied in the context of the *Mitchell* type cases, permit an orderly resolution of the underlying litigation.

We recognize the opportunity for abusive delay inherent in the protections afforded by the doctrines of absolute and qualified immunity, but we believe that it can be minimized by diligent administration of pretrial proceedings in the district court and the effective use of procedures for expediting the resolution of insubstantial appeals in the court of appeals.

The foregoing principles are applicable to this litigation.

## II.

The complaint filed in the district court alleged that during the early morning hours of October 27, 1981, plaintiff Robert E. Kennedy, Jr., was proceeding in his automobile along Pearl Road in Cleveland when he was stopped by two Cleveland City police officers for having allegedly failed to obey a red light. It is alleged that during the arrest Officer John Riley later joined by his fellow officer, Raymond Offutt, assaulted Kennedy, and that other officers, who subsequently arrived at the scene, ignored Kennedy's complaints of pain. Upon arriving at the station, Kennedy alleges that he was placed in a jail cell where he was again assaulted and verbally abused by Riley who repeatedly punched

---

**6.** Although Fed.R.Civ.P. 56(b) states that a defendant may move for summary judgment "at any time," we do not believe that this precludes the district court from controlling the proceedings before it, at least not to the extent of requiring it to consider disruptive motions on the eve of trial. *See Management Inv. v. UMW*, 610 F.2d 384, 389 (6th Cir.1979); *Eagle v. Ameri-* can Tel. & Tel. Co., 769 F.2d 541, 548 (9th Cir.1985); *U.S. Dominator v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1104 (9th Cir.1985); *United States v. First Natl. Bank of Circle*, 652 F.2d 882, 886 n. 5 (9th Cir.1981); *Williams v. Howard Johnson's, Inc.*, 323 F.2d 102 (4th Cir. 1963); *but see Manetas v. International Petro. Carriers, Inc.*, 541 F.2d 408, 413 (3d Cir.1976).

and kicked him while Offutt and another officer stood by. Thereafter, Kennedy alleges, he was transported in the custody of Riley and Offutt to Cuyahoga County Metropolitan Hospital for examination and treatment. He alleges that the officers caused him to be handcuffed during most of his hospital stay. He further alleges that during his stay at the hospital he was twice assaulted by officers assigned to guard him. Two other defendants whose identities apparently are unknown are alleged to have threatened Kennedy that his family would be harmed or that his residence would be burned to the ground. Finally, he maintains that to "cover up their own misconduct" defendants Riley and Offutt in conjunction with others, filed criminal charges against the plaintiff which they knew to be untrue. Kennedy contends that these acts were taken pursuant to a policy, practice and custom of the police department "to summarily punish persons who are stopped or arrested, or refuse to obey unlawful police orders or who refuse to submit to excessive use of force and the denial of necessary medical attention" and that such policies and practices violate the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. §§ 1983, 1985, and 1986.

Appellants here are not the officers directly involved in the assault. William Hanton is Chief of Police for the City of Cleveland, and Frank Wszelaki is an officer of the Cleveland Police in the Internal Affairs Division who with one Officer Romph was assigned the responsibility for investigating, conducting interviews of witnesses and collecting evidence with respect to citizen complaints against officers in the department. It is alleged that, contrary to their responsibility, Wszelaki and Romph failed to initiate or recommend disciplinary or criminal action against the police officers who committed misconduct and instead deliberately covered up such activities. In a supplemental complaint it was further alleged that Hanton, Wszelaki and other policy making officials of the City established a policy that makes the disci-

pline and prosecution of police officers for misconduct improbable. The complaint as amended generally alleged that Chief Hanton participated in a policy of tolerating the coverup of misconduct and encouraging misconduct by failing to provide adequate training and supervision of the officers and by failing to promulgate and enforce necessary rules of conduct. All of this, it is alleged, resulted in serious physical harm to plaintiff Robert E. Kennedy. Kennedy's wife, Joyce, sought damages for loss of consortium and companionship and also alleged that because of his injuries she was compelled to care for plaintiff and was deprived of his services.

Hanton and Wszelaki were sued both in their personal and official capacities. Also named in the complaint, as amended, were not only other officers of the department but as well as the City of Cleveland, its mayor, its prosecutor, and the Cleveland Police Department. The complaint sought compensatory and punitive damages, declaratory relief and certain injunctive relief, purportedly to avoid on behalf of the public at large a repetition of the injury allegedly suffered by the plaintiffs through the development of "specific, adequate and clear guidelines in accordance with all rights secured by the constitutions of the State of Ohio and of the United States." The complaint also alleges pendent claims against the defendants under Ohio law.

### III.

Appellants Hanton and Wszelaki appeared and answered separately but through the same attorney. Each raised as a special defense that "these defendants acted lawfully, with probable and reasonable cause and in good faith." In addition, Chief Hanton specifically claimed that he was "immune from the damages claims asserted in the complaint."

The civil docket sheets in the district court reflect extensive activity in the case between the January 10, 1983, filing of the answers by appellants and the entry upon the docket on August 27, 1984, of an order

of the trial judge scheduling the case for trial on a standby basis for a two week period commencing December 3, 1984, and ordering that "all dispositive motions must be filed with the court by October 15, 1984." Activity in the case is reflected by more than sixteen pages of docket continuation sheets from the date of filing the complaint on October 26, 1982, until August 27, 1984.

Numerous status calls were made by the court and both sides engaged in extensive discovery by way of interrogatories. On November 1, 1984, after receiving permission to file after the deadline for dispositive motions, Wszelaki and Hanton joined by the City of Cleveland and its mayor moved for summary judgment. The extensively documented statement of reasons appears to have been directed primarily to the absence of any involvement by the individual defendants in the alleged misconduct and in the absence of any evidence, following discovery, that there was a coverup by the Chief or by Officer Wszelaki. Hanton and Wszelaki argued that they therefore were entitled to judgment as a matter of law for the failure of the plaintiffs to produce any evidence of liability or to rebut any evidence of nonliability which had been assembled in the course of discovery or was contained in affidavits attached to the motion. In an extensive opinion and order dated February 12, 1985, the court, having previously granted a motion for continuance of the scheduled December 1983 trial date, granted defense motions to dismiss plaintiff Robert Kennedy's claims brought under 42 U.S.C. §§ 1985 and 1986. The motions for summary judgment were denied as to the City of Cleveland, Hanton and Wszelaki based upon the court's examination of the entire record of the criminal proceedings against Robert Kennedy in the Cleveland Municipal Court[7] and review of the written statements of many of the police officers and of the employees of the hospital, statements taken by Officers Romph and Wszelaki, and affidavits. As to Chief Hanton, the court concluded that

"a trier of fact could find, based upon the materials presented, that the defendant Hanton was a party to the conspiracy." With respect to defendant Wszelaki, the trial judge saw the issue as a "consideration of whether evidence exists to support Kennedy's claim that the alleged post-assault cover-up conspiracy had as a goal the *continued* and *unjustified* prosecution of Kennedy as a countermeasure to Kennedy's brutality countercharge against officers of the police department." The court found that a trier of fact could reasonably conclude that "not only did a post-assault cover-up conspiracy exist, but that Wszelaki participated in the conspiracy."

After eight days of trial the judge on April 19, 1985, declared a mistrial based upon the court's determination from the evidence presented that the defense of both Chief Hanton and Officer Wszelaki could not be properly conducted by a single counsel in view of a conflict of interest between those two defendants. Following the mistrial, existing counsel continued in his representation of Chief Hanton but Officer Wszelaki thereafter obtained separate counsel and a further continuance of trial until October 7, 1985.

On September 24, 1985, Hanton, without requesting further permission to extend the earlier October 15, 1984, deadline for dispositive motions, filed what he characterized as a "supplemental" motion for summary judgment, raising a claim of qualified immunity and requesting a stay of proceedings under the then recently decided case of *Mitchell v. Forsyth*. This was followed with an addendum in which he also raised a claim of absolute immunity. On October 1, 1985, Wszelaki, now appearing by his own counsel but without obtaining specific permission, filed a motion for reconsideration of his previous motion for summary judgment. That motion also included claims of absolute and qualified immunity.

7. Kennedy was acquitted on one count of assault and two counts of carrying a concealed weapon. He pled no contest to a charge of disorderly conduct and the remaining charges were dismissed.

Following a hearing, the district court, in an opinion dated October 2, 1985, rejected both motions finding no good cause for reconsideration of his February 12, 1985, order denying summary judgment.

It is plain that after the mistrial and before the case was set for a new trial, Hanton and Wszelaki both sought to take advantage of the ruling in *Mitchell v. Forsyth*, which had been forthcoming in the meantime, to seek an early decision on their claims of immunity. Obviously endeavoring to avoid the claim that his earlier motion for summary judgment had invoked the defense but that he had waived objection by failing to appeal, Hanton claimed that the original November 1, 1984, motion did not raise an immunity claim. The trial judge however struck the supplemental motion concluding that Hanton had on November 1, 1984, sought summary judgment based at least in part on immunity. While it is difficult to read this motion as a claim of immunity it is not impossible and, the trial judge, who had participated in the development of the claims and arguments in this case, so conceived it. Hanton's earlier motion did refer to *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), at least in discussing the plaintiffs' failure to satisfy pleading requirements, and although he did not use the word immunity, he seems very clearly to have relied on *Harlow's* protection of qualified immunity, while stressing general absence of a showing of liability in any event. Moreover, counsel for Hanton had in his argument for the supplemental motion acknowledged that,

> Your honor, I don't think that [the supplemental motion presents] any different underlying arguments. I think it is another view of saying the same arguments.... Now I believe the underlying arguments have been made all along, and we're simply clarifying them in the sense of pointing out that the Chief is entitled to qualified as well as absolute immunity on the basis of the arguments that have been made.

In Wszelaki's case it is apparent that the judge had some greater sympathy. In its order of April 24, 1985, declaring a mistrial the court indicated that Wszelaki's testimony supported his reliance upon a defense of qualified immunity. Thus, a part of Wszelaki's defense appeared to be that he was acting under direct orders from his superior when he conducted the investigation. And in his case at the aborted trial counsel had represented that since Wszelaki was expected to pass upon the placing of charges against the officers involved, his role was prosecutorial and hence he was entitled to an absolute immunity. On October 2, Wszelaki's motion for reconsideration was likewise stricken, the court conceiving that Wszelaki also had previously relied upon the immunity defense. While the trial judge had indicated that for good cause shown he would permit a lifting of the previous cutoff date on discovery and motions, he was not satisfied with the merits of the defense nor did he believe even that it had been timely filed. Granting that *Mitchell* had clarified the existing law with respect to the appealability of pretrial orders denying qualified immunity, the trial judge noted that while *Mitchell* had been decided on June 19, 1985, Wszelaki's counsel had waited until October 1, 1985, to file his motion. He therefore held that the motion was untimely and was without any showing of good cause why its interposition should be delayed until shortly before the scheduled retrial date.

## IV.

■ As we stated earlier, the appealability of orders denying absolute and qualified immunity is governed by the same temporal limitations and subject to the same rules as other appeals, whether interlocutory or final. If Hanton's and Wszelaki's November 1 motion did in fact raise the question of absolute or qualified immunity, the parties had thirty days after the order denying it in which to file a notice of appeal. Having failed in this we conclude that they lost that right, and any later effort to appeal would not be timely. While the supplemental motions might

have been construed as motions to alter or amend under Fed.R.Civ.P. 59(e) and, as such, would have extended the period for filing an appeal, these motions were filed well outside the ten-day limitation period of Rule 59(e). *Denley v. American Exp. Inc.*, 733 F.2d 39 (6th Cir.1984); *Venen v. Sweet*, 758 F.2d 117 (3d Cir.1985). Since motions for reconsideration must be timely in order to extend the period for appeal, the untimely supplemental motions here cannot have worked such an extension. *Browder v. Director, Dept. of Corrections*, 434 U.S. 257, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978).

Having said this much the question yet remains whether such motions can be renewed after they were earlier denied and whether their denial can be made the object of a new and independent appeal. Certainly renewal of such motions seems to us to be a matter best left to the sound discretion of the trial judge who is charged with the responsibility for managing his docket and insuring an expeditious processing of the litigation. Where, as here, no new facts or previously unavailable legal arguments were offered and no good cause has been shown to excuse the inordinate delay, it was not an abuse of discretion in our judgment for the trial judge to have denied the motions. *See In re Walton Hotel Co.*, 116 F.2d 110, 112 (7th Cir.1940).

■ We realize that the action of the trial judge in striking the renewed motions rather than merely denying them, is counter to the holding in *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880 (9th Cir. 1983). *Sidney-Vinstein* held that it is normally error for a district court acting under Fed.R.Civ.P. 12(f) to strike a Rule 59(e) motion for reconsideration rather than simply denying it. The basis for the Ninth Circuit holding that this was error was that the court was permitted to strike pleadings only for "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," *id.* at 885, and that the general use of Rule 12(f) as a means of not addressing the motion is not to be approved.

An order striking a motion to reconsider is necessarily a post judgment decision. Since the function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial, striking a motion to reconsider fails to comply with the policies underlying F.R.Civ.P. 12(f). *Id.* at 885.

Here, while technically in the form of a striking of the pleading, the order was plainly a denial of the motion and our standard for review, whether the trial judge abused his or her discretion, remains the same. The argument made in *Sidney-Vinstein* that, because motions to strike in effect "delete from the record both the motion to reconsider and all supporting briefs and evidentiary exhibits," improper employment of Rule 12(f) "would shield erroneous district court orders from review," *id.* at 885, is not altogether satisfying. The right exists in any event to make an adequate separate record in much the same way that striking of other pleadings and evidence may still be accompanied by preservation of the same for the purposes of appeal. While we agree that the better practice would have been to have directly denied the motions as untimely without striking them, we view the error, if any at all, as harmless.

## V.

■ As noted earlier, the Kennedys have sought not only personal liability and damages but also have brought suit against the defendants in their official capacities, and in addition to damages have requested injunctive relief.[8] At least one circuit has held that under such circumstances the denial of a claim of immunity is not immediately appealable when it appears

---

**8.** The Supreme Court in *Mitchell* declined the decide whether a district court's denial of summary judgment predicated on a claim of qualified immunity is immediately appealable when the moving defendant would remain in the litigation in his official capacity. *Mitchell*, 105 S.Ct. at 2812 n. 5.

that the defendant in question will remain a party of the suit for injunctive relief purposes. *Bever v. Gilbertson,* 724 F.2d 1083 (4th Cir.), *cert. denied,* 469 U.S. 948, 105 S.Ct. 349, 83 L.Ed.2d 285 (1984). The Fourth Circuit reasoned that since the purpose of the interlocutory appeal was to permit a party to obtain an early termination of the litigation as to him so that the party in question could continue on in his performance of his duty, the achievement of that purpose fails when that same party must in all events continue in the lawsuit. *Bever* noted that qualified immunity was not designed to operate as a complete bar to claims against public officials but rather to provide an avenue for expeditious termination of litigation and protection against claims of non-constitutional wrongs. The court concluded that under the circumstances, with the trial and prospect of prompt vindication close at hand, the denial of immunity claims would have little deterrent effect on "the willingness of responsible persons to serve in public office." *Id.* at 1087.

We decline to follow the Fourth Circuit rule here. Although it plainly would have eased our task on review by offering a very quick answer to the problems of appealability, the reasoning does not remain persuasive in our view in light of the Supreme Court's later holding and rationale in *Mitchell.* The exposure to personal liability in damages and the potential need for retention of private counsel to protect against that risk is quite different from the problem faced by an official who is charged only in an official capacity. The dilemma arising from the dual capacity in which a defendant is sued is particularly evident here where in fact it caused a mistrial. We believe that the rationale of *Mitchell v. Forsyth* should apply equally whether only personal liability for damages is sought or whether added relief against the defendant in his official capacity is also sought.

Finally we make clear, as does *Mitchell,* that our decision here, as well as the trial judge's, decides no more than whether the defendants must go to trial. It is not intended to preclude the interposition of the defense of qualified or absolute immunity as a defense on the merits itself. *See Mitchell v. Forsyth,* 105 S.Ct. at 2816.

AFFIRMED.