**Brian L. DENTON, Plaintiff,**

v.

**George W. TWYFORD, et al., Defendants.**

**No. C2–91–848.**

United States District Court, S.D. Ohio, E.D.

April 29, 1992.

Donald L. Billman, Columbus, Ohio, for Brian L. Denton (plaintiff).

Frederick M. Morgan, Jr., Cincinnati, Ohio, for Hon. George W. Twyford, Hon. Charles R. Petree, Hon. Ronald L. Solove, Hon. Katherine S. Lias, Hon. Clifford R. Cloud (defendants).

Elizabeth A. Scott, Asst. Pros. Atty., Columbus, Ohio, for David S. Sims, Roseanne Davis, Jerry Foulk, Hugh DeMoss, Dorothy Teater (defendants).

## ORDER

KEMP, United States Magistrate Judge.

Brian L. Denton, formerly an employee at the Franklin County Juvenile Detention Center, filed this action asserting that his termination from that employment violated his constitutional rights. The question of whether he had a constitutionally-protected property interest in continued employment hinges on whether he was a member of the classified or unclassified service under Ohio law. In an Opinion and Order filed on February 6, 1992, Judge Graham denied the defendants' motion to dismiss, concluding that the factual record needed to be developed further before that issue could properly be addressed.

The parties had agreed that discovery would be stayed pending a resolution of the motion to dismiss. Once that motion was denied, plaintiff commenced discovery including, *inter alia*, noticing depositions of several of the juvenile court judges who were involved in the final termination of his employment. It would appear that one or more of those judges would also have pertinent information concerning the factu-al issues identified in Judge Graham's Opinion and Order.

All defendants have asserted qualified immunity from suit in their answer. The judicial defendants, recognizing that they are not being sued for judicial acts and that absolute judicial immunity is not available, nonetheless assert that because of their intention to move for summary judgment based upon qualified immunity, they should not be subjected to depositions at this time. They moved for a protective order on March 24, 1992. Plaintiff opposed that motion on March 27, 1992 and a reply brief was filed on April 2, 1992. For the following reasons, the motion for a protective order will be denied.

This case illustrates the tension which exists between the need to decide claims of qualified immunity in a prompt fashion, so as to relieve an immune defendant not only from the threat of liability but also from the unnecessary burden of defending a lawsuit, and the court's need to process cases on its docket in an orderly fashion. Because, under certain circumstances, assertion of a claim of qualified immunity is sufficient to cause the court to stay discovery, and because a denial of a claim of qualified immunity can be appealed, there are frequently situations where recognition and evaluation of such a claim disrupts the orderly flow of a case through the court system. As the Court of Appeals has stated, "We recognize the opportunity for abusive delay inherent in the protections afforded by the doctrines of absolute and qualified immunity, but we believe that it can be minimized by diligent administration of pretrial proceedings in the district court...." *Kennedy v. City of Cleveland,* 797 F.2d 297, 301 (6th Cir.1986), *cert. denied,* 479 U.S. 1103, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987). The question of whether a stay of the depositions of the judicial defendants should be ordered is a question directed to the court's obligation to administer the pretrial proceedings in this case diligently, giving due recognition to the protections afforded to defendants who may be qualifiedly immune.

*Kennedy* noted that there are "three different and relatively independent aspects of immunity." *Id.* at 299. The first, of course, is "the historic right to be immune from ultimate liability and damages...." *Id.* In addition, there are two distinct stages of the pretrial proceedings at which the doctrine of immunity might be interposed. The first is in response to the pleadings themselves. As the court stated, "[t]he failure to ... plead [a claim for which no immunity is available] precludes a plaintiff from proceeding further, even from engaging in discovery, since the plaintiff has failed to allege acts that are outside the scope of the defendant's immunity." *Id.* If the case is in that posture, discovery should be stayed until the immunity issue is decided. However, "[i]f the complaint sufficiently alleges actions outside the scope of the official's immunity, the defendant still retains the right to file a motion for summary judgment so that the further harassment of going to trial may be avoided." *Id.* In the latter case, however, the defendant will necessarily have been forced to submit to some discovery, and it is the burden of going to trial, rather than the burden of being subjected to discovery, which is protected by the raising of the claim for qualified immunity at the summary judgment stage of the case. *Kennedy* unequivocally suggests, in the passages quoted above, that the doctrine of qualified immunity has different functions in different stages of the case, and does not necessarily entitle a potentially immune defendant to avoid submitting to discovery.

All of the defendants raised the defense of qualified immunity in their answer. However, the initial motion to dismiss filed in this case did not argue qualified immunity, although there is no apparent reason why that could not have been done. The court certainly does not fault defendants' counsel for failing to raise that issue, since there are obviously strategic reasons why certain issues are not raised until certain stages of a case. On the other hand, the fact that the issue was not raised by way of a motion to dismiss, and, in fact, has not yet been raised by a summary judgment motion, is relevant to the question of whether discovery should be permitted from the judicial defendants in the interim. Simply stated, at this stage of the case those defendants have not yet challenged the complaint as raising issues that fall only within the scope of the qualified immunity from suit which the defendants may enjoy.

What is striking about this case, however, is the fact that the judicial defendants may well remain as parties in the case even if their claim for qualified immunity, raised by way of the forthcoming summary judgment motion, is sustained. Because there appears to have been some employment relationship between the judges and the plaintiff, it may well be that any injunctive relief which would restore the plaintiff to his previous position would have to operate against the judges as employers. There are, of course, cases where parties who remain in a suit simply because of their susceptibility to injunctive relief will have no knowledge relevant to the matters at issue, and would therefore not be subject to discovery once a claim for qualified immunity was appropriately raised and favorably decided. In this case, however, the judges are defendants not only because of their apparent employer-employee relationship with the plaintiff, but because they presumably have knowledge about the relationship between the county commissioners, the juvenile court, and the detention center. Judge Graham's Opinion and Order points out the many factual issues which remain, and those factual issues include matters about which the judges would appear to have knowledge, whether they remain parties to the suit or whether they are ultimately dismissed.

The United States Supreme Court, in *Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980), made the following pronouncements relevant to this case. The Court dealt with the issue of whether private actors who allegedly violated § 1983 by conspiring with judges, who themselves are immune to suit under that section, share in the judges' immunity. One of the arguments made was that, if the private parties were not granted immu-

nity, the progress of the lawsuit would involve the judge as a witness and would interfere with the judge's performance of his or her judicial duties. The Court rejected that claim, stating that although judicial immunity protects the judges themselves from suit, "there is no similar constitutionally based privilege immunizing judges from being required to testify about their judicial conduct in third-party litigation. Nor has any demonstration been made that historically the doctrine of judicial immunity not only protected the Judge from liability but also excused him from responding as a witness...." *Sparks v. Dennis*, 449 U.S. at 30, 101 S.Ct. at 188. As the court further noted, *id.* at 31, 101 S.Ct. at 188, "neither are we aware of any rule generally exempting a Judge from the normal obligation to respond as a witness when he has information material to a criminal or civil proceeding."

In this case, the judges apparently do not disagree that, at some point, they might be required to be witnesses in this case. The assertion they make is an unusual one: they need not appear to give testimony as witnesses until the issue of whether they are qualifiedly immune either from the burden of going to trial, or from any judgment for damages, is decided. In effect, they appear to claim that, by naming them as parties, the plaintiff is less able to take discovery from them than had they not been named at all. It is my view that, if such an unusual proposition were to be accepted, the defendants would be required to provide persuasive authority that such a result is required. They have cited no cases dealing with that specific issue, however, and have only argued generally from the precepts behind qualified immunity that such a rule should be applied in this case.

This case may well be susceptible to summary judgment on its merits, after all of the facts concerning the interrelationship between the juvenile court, the juvenile detention center, and the county commissioners of Franklin County are developed. Discovery from the judges is an integral part of that fact-developing process. Additionally, the court may well be required to defer any decision on the issue of whether the judges are qualifiedly immune until the facts are known. There may well be factual scenarios which exist which would make it clear that, under Ohio law, employees of this particular juvenile detention center are members of the classified service. The court simply does not know what the facts will show. If the court stayed any discovery from the judges, however, the court's ability to decide either that the judges are entitled to be relieved of the burden of going to trial, or whether the case itself has any merit, would be severely hampered. It would be entirely inconsistent with the "diligent administration of pretrial proceedings in the district court" referred to by *Kennedy, supra,* to grant the judges blanket immunity from appearing at depositions simply because the question of whether they would ultimately be entitled to qualified immunity in this suit is unresolved. They are material witnesses, and have no immunity, absolute or qualified, from giving evidence.

It should be emphasized that the court is not unsympathetic to the potential interruption of judicial schedules which occurs when judges are either parties or witnesses to litigation. It appears that the plaintiff in this case is willing to schedule these depositions at times convenient to the judges. The court would also suggest that the parties attempt to limit the number of judges' depositions to those judges who appear to have the most extensive knowledge about subjects at issue. Working within those restrictions, the court is confident that any disruption to the judges' schedule can be minimized. However, there is simply no persuasive authority presented to show that, under the particular facts of this case, and given the judges' status as material witnesses as well as parties, discovery from them should be absolutely stayed pending resolution of a yet-to-be filed motion for summary judgment. Consequently, the judicial defendants' motion for a protective order is DENIED.

Any party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsidera-

**144**

tion by a District Judge. 28 U.S.C. § 636(b)(1)(A), Rule 72(a), Fed.R.Civ.P.; Eastern Division Order No. 91–3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D.Ohio L.R. 72.4.