Jerome YATES, Jameela Yates,
Plaintiffs–Appellees,

v.

CITY OF CLEVELAND, Defendant,

Sanford L. Currie, Officer,
Defendant–Appellant.

No. 90–3556.

United States Court of Appeals,
Sixth Circuit.

Argued March 25, 1991.

Decided Aug. 12, 1991.

Rehearing and Rehearing En Banc
Denied Oct. 1, 1991.

Terry H. Gilbert (argued), Friedman, Gilbert & Berezin, Cleveland, Ohio, for plaintiffs-appellees.

Gary R. Williams (argued), City of Cleveland Law Dept. Office of Director of Law, Roberto H. Rodriguez, Cleveland, Ohio, for defendant and defendant-appellant.

Before JONES and SUHRHEINRICH, Circuit Judges, and JOINER,* Senior District Judge.

NATHANIEL R. JONES, Circuit Judge.

This case involves a section 1983 claim of excessive force against a police officer and a municipality. The district court denied a summary judgment motion based on the police officer's qualified immunity. The defendant then brought this interlocutory appeal of the denial of qualified immunity under *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). We agree with the district court that the police officer is not entitled to qualified immunity, and therefore affirm.

I

One of the few facts on which all parties are able to agree is that in the early morning hours of April 7, 1984, Officer Sanford Currie of the Cleveland Police Department shot Jerome Yates. Yates, twenty-four years old at the time of the shooting, is now a quadriplegic. On the night of the shooting, Jerome Yates, along with his wife, mother, brothers, and three others were attending a party in the upstairs apartment at 1371–1373 E. 91st Street in Cleveland. At about 1:00 a.m., Samuel and Rodney Yates left to patronize a nearby bar. Shortly thereafter, the three non-family members were asked to leave the party because of rude behavior. The ejected trio returned a few minutes later armed with baseball bats but were chased away. Rodney and Samuel Yates then returned from the bar and learned of the incident. Rodney left the house to search for the troublemakers. When Rodney returned he was bloody and claimed to have been shot by one of the individuals ejected from the party. Rodney had to break a plate glass door to enter the house.

Meanwhile, at 2:45 a.m., Officer Currie and his partner responded to a call of a disturbance in the street in front of 1370 E. 91st Street. When the officers approached the house on foot, they heard shouting and threatening language coming from inside the house. Officer Currie's partner then returned to the car to radio for assistance, and Currie proceeded into the poorly lit hallway. Officer Currie did not identify himself as a police officer, was not wearing his hat, and did not use a flashlight or display a billy club. The four Yates brothers, already in a confused state from the disturbance at the party and their brother's injury, perceived an intruder in the hallway and rushed down the steps. At this point, Currie states that the brothers knocked him back through the door, and compelled him to draw his gun and fire because he felt vulnerable to attack.

Plaintiff Jerome Yates offers a differing version of the incident in which the brothers froze on the steps after Samuel Yates yelled "It's a cop!" or "It's a policeman!" Yates also states that Currie tripped on a warped floorboard while moving backward, and purposefully shot him while his hands were raised and after he said "Don't shoot." Also according to Yates, Currie and his partner drove down the street with

---

* The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

their lights off following the shooting and made no attempt to help him.

In his report on the incident, Currie stated that he was kicked, beaten in the face, and stomped on. At the emergency room after the shooting, however, Currie was only treated for superficial scrapes on his knee and ankle.

On October 26, 1984, Jerome Yates and his wife Jameela Yates filed this suit claiming malicious prosecution, loss of consortium, and violations of 42 U.S.C. §§ 1981, 1983, 1985, 1986. On August 9, 1989, two weeks before trial was scheduled to begin, defendants filed a motion for summary judgment. On April 20, 1990, the district court granted defendants' summary judgment motion with respect to the malicious prosecution claim, and the claims arising under 42 U.S.C. §§ 1981, 1985, 1986.

The district court denied the summary judgment motion with respect to the section 1983 and loss of consortium claims. The district court first concluded that the City of Cleveland may be held liable for the shooting by Currie. In addressing the issue of whether the city's police training policies could hold the city liable, the district court stated that: "[t]he fact that the city has a policy on its books is not dispositive in and of itself, but the question is how a policy is applied that may give rise to a constitutional violation.... It is clear to this Court that there is a material dispute as to the issue of exactly what type of supervision and training did the city of Cleveland give to its police officers." J.App. at 407–08 (Memorandum and Order).

The heart of plaintiff's section 1983 claim alleges that the City of Cleveland was knowingly and deliberately indifferent to the unconstitutional use of deadly force by their police officers. Plaintiff's expert on police practice and procedure, Dr. James J. Fyfe, reviewed the relevant material. Dr. Fyfe was prepared to offer the opinion that defendant Currie was inadequately trained in the use of deadly force; that investigations of citizens' complaints were covered up; that no disciplinary action was taken as to Officer Currie despite a pattern of misconduct; and that these practices indicated a policy which led to the unconstitutional shooting.

The district court apparently neglected to rule on the qualified immunity issue with respect to Officer Currie in its April 1990 Memorandum and Order. As a result, the City of Cleveland and Officer Currie filed a Motion for Reconsideration, specifically arguing that Currie was entitled to qualified immunity. J.App. at 409–10. On May 18, 1990, the district court issued a Memorandum and Order denying the request for qualified immunity. On June 18, 1990, Officer Currie filed an interlocutory appeal on the basis of the district court's denial of qualified immunity.

## II

Because review of a denial of qualified immunity claim is an issue of law, our review is *de novo*. *Eugene D. by and through Olivia D. v. Karman*, 889 F.2d 701, 706 (6th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2631, 110 L.Ed.2d 651 (1990). In *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Supreme Court set out the standard for qualified immunity:

[G]overnment officials performing discretionary functions [have] qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. Somewhat more concretely, whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action assessed in light of the legal rules that were 'clearly established' at the time it was taken.

\* \* \* \* \* \*

[O]ur cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable offi-

cial would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton,* 483 U.S. at 638–40, 107 S.Ct. at 3038–39 (citations omitted).

■ The relevant inquiry, then, should first focus on whether an objectively reasonable officer would believe that the shooting of Yates was lawful. At the time of the shooting it was clearly established in the Sixth Circuit that Yates "had a right not to be shot unless he was perceived to pose a threat to the pursuing officers or to others[.]" *Robinson v. Bibb,* 840 F.2d 349, 351 (6th Cir.1988) (relying on *Garner v. Memphis Police Dep't,* 710 F.2d 240, 246 (6th Cir.1983), *aff'd and rem'd sub nom. Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). As Yates' right not to be shot by an officer unless he posed a threat to the officer or to others was clearly established, it is apparent that "a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. It was not 'objectively reasonable' for Currie to enter the dark hallway at 2:45 a.m. without identifying himself as a police officer, without shining a flashlight, and without wearing his hat. Thus, because the right Officer Currie is alleged to have violated was clearly established, and because Officer Currie's actions preceding the shooting were not those of an objectively reasonable police officer, we conclude that qualified immunity is not appropriate.

■ Officer Currie argues that he is entitled to qualified immunity because he reasonably believed his life to be in danger. At the moment when the Yates brothers were on the steps and Currie was on his back in the doorway, Currie asserts that there was an immediate threat to his safety; therefore, the shooting was objectively reasonable. Officer Currie may have experienced subjective moments of apprehension as he entered the doorway that night.

However, Currie's "subjective beliefs ... are irrelevant.... The relevant question ... is the objective (albeit fact-specific) question of whether a reasonable police officer could have believed ... [the shooting] to be lawful, in light of the clearly established law and the information the searching officer possessed." *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3040.

■ Currie also concedes that he failed to identify himself in the dark hallway, and that he did not utilize a flashlight or wear his police hat, but he characterizes these omissions as "mere negligence" upon which section 1983 liability cannot be predicated. *See Nishiyama v. Dickson Cty.,* 814 F.2d 277, 282 (6th Cir.1987) (en banc). Currie is correct that mere negligence may not serve as a basis for a section 1983 claim. In our view, though, Officer Currie's action on the night of the shooting are cognizable under section 1983. An officer who intentionally enters a dark hallway in the entrance of a private residence in the middle of the night, and fails to give any indication of his identity, is more than merely negligent.

■ Currie also relies on *Brandenburg v. Cureton,* 882 F.2d 211, 215 (6th Cir. 1989), which stated that "[t]he use of deadly force is reasonable if an officer believes that there is a threat of serious physical harm to the officer or others." With respect to the qualified immunity issue, however, *Brandenburg* actually supports Yates' position. In *Brandenburg,* as in the instant case, a factual dispute surrounded the shooting; therefore, this court held that the reasonableness of the shooting was a jury question. *Id.* at 215–16 ("[In this case] the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury."). Under *Brandenburg,* then, qualified immunity before trial would be inappropriate because factual disputes remain. *See also Hutton v. Strickland,* 919 F.2d 1531, 1536 (11th Cir.1990) (summary judgment on qualified immunity grounds inappropriate if genuine issues of material fact exist).

Currie's arguments focus on the merits of the case under the pretext of addressing

qualified immunity. For example, he relies heavily on *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) in order to establish that his actions were objectively reasonable. *Graham v. Connor*, however, was addressed to the proper constitutional standard to be applied in excessive force cases, not qualified immunity: "Since *no claim of qualified immunity has been raised in this case*, however, we express no view on its proper application in excessive force cases that arise under the Fourth Amendment." *Graham*, 109 S.Ct. at 1873 n. 12 (emphasis added). Thus, *Graham v. Connor* is not relevant to the narrow issue raised in this appeal.

### III

■ Yates makes an additional argument, which goes unanswered by Currie, that this court should deny the appeal on waiver grounds. The waiver issue stems from the fact that Currie waited until five years after the initial filing to raise the qualified immunity defense.

Under the doctrine announced in *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817–18, 86 L.Ed.2d 411 (1985), "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291[.]" The Supreme Court in *Forsyth* emphasized that "the appealable issue is a purely legal one: whether the facts alleged (by the plaintiff, or, in some cases, the defendant) support a claim of violation of clearly established law." *Id.* at 528 n. 9, 105 S.Ct. at 2816 n. 9.

Unfortunately, *Forsyth* appeals can be employed for the sole purpose of delaying trial. This possibility has not eluded the attention of the Courts of Appeal. In *Kennedy v. City of Cleveland*, 797 F.2d 297 (6th Cir.1986), *cert. denied sub nom. Hanton v. Kennedy*, 479 U.S. 1103, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987), this court held that the right to take an interlocutory appeal of a denial of qualified immunity was "subject to waiver for noncompliance with reasonable temporal limitations placed by the district court upon the filing of motions

seeking immunity." *Id.* at 298. In *Kennedy*, the district court denied, and this court affirmed, the defendants' summary judgment motion based on qualified immunity because the motion was filed after the deadline for dispositive motions had passed. *Id.* at 303–04.

The Seventh Circuit has directly addressed this issue in *Apostol v. Gallion*, 870 F.2d 1335 (7th Cir.1989), which examined the jurisdictional bases of *Forsyth* appeals from a denial of qualified immunity. In *Apostol*, Judge Easterbrook's opinion noted that a *Forsyth* appeal divests a district court of jurisdiction to conduct a trial until qualified immunity is resolved. *Id.* at 1338. However, delaying trial in order to allow a defendant to appeal a denial of qualified immunity prolongs the process, often to the disadvantage of the plaintiff:

> During the appeal memories fade, attorneys' meters tick, judges' schedules become chaotic (to the detriment of litigants in other cases). Plaintiffs' entitlements may be lost or undermined.
>
> Most deferments will be unnecessary. The majority of *Forsyth* appeals—like the bulk of all appeals—end in affirmance. Defendants may seek to stall because they gain from delay at plaintiffs' expense, an incentive yielding unjustified appeals. Defendants may take *Forsyth* appeals for tactical as well as strategic reasons: disappointed by the denial of a continuance, they may help themselves to a postponement by lodging a notice of appeal. Proceedings masquerading as *Forsyth* appeals but in fact not presenting genuine claims of immunity create still further problems.

*Apostol*, 870 F.2d at 1338–39. In order to prevent *Forsyth* appeals from becoming an "entitlement to block the trial", *id.* at 1339, *Apostol* makes the following suggestions (based on an analogy with double jeopardy cases): (1) allow the district court to certify an appeal as frivolous and begin the trial; or (2) expedite through summary disposition appeals in which the defendant has "wait[ed] too long after the denial of summary judgment" or "use[d] claims of immu-

nity in a manipulative fashion[.]" *Id.* at 1339.

Judge Easterbrook revisited this issue the year after *Apostol* in *Abel v. Miller,* 904 F.2d 394 (7th Cir.1990). *Abel* held that sequential appeals of pretrial rulings on qualified immunity are not authorized under *Forsyth. Id.* at 397. Focusing on the fact that sequential *Forsyth* appeals "would give defendants potent weapons for delay", *id.,* Judge Easterbrook spoke convincingly of the threat of *Forsyth* appeals to section 1983 claims:

> Unless courts of appeals are careful, appeals on the authority of *Mitchell* could ossify civil rights litigation. Defendants may defeat just claims by making suit unbearably expensive or indefinitely putting off the trial. A sequence of pre-trial appeals not only delays the resolution but increases the plaintiffs' costs, so that some will abandon their cases even though they may be entitled to prevail. [Citing *Apostol.*] Although it is important to protect public officials from frivolous claims and burdens of trials, it is also important to curtail the outlay and delay of litigation, so that victims of official misconduct may receive the vindication that is their due.

*Abel,* 904 F.2d at 396.

The Supreme Court has clearly emphasized that "qualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson,* 483 U.S. at 646 n. 6, 107 S.Ct. at 3042 n. 6. We find considerable support in the record for the view that Currie has employed the qualified immunity defense and the privilege of instituting a *Forsyth* appeal in a dilatory fashion. Currie did not raise the qualified immunity defense until a full five years after the filing of the complaint, and days before the trial was scheduled to commence. During this time, Yates engaged in extensive discovery and invested, one would imagine, a considerable amount in time, money, and energy. Although Currie may pursue any appropriate defense strategies, the presentation of a qualified immunity defense on the eve of trial, five years after the initial filing, must be examined critically. By moving for summary judg-ment based on qualified immunity and bringing this interlocutory appeal, Currie has succeeded in delaying the trial for nearly a year. As this court stated in *Kennedy,* a defendant's right to bring an interlocutory appeal under *Forsyth* brings with it a concomitant responsibility on the part of the defendant to exercise "a reasonable modicum of diligence in the exercise of that right." *Kennedy,* 797 F.2d at 301.

Nevertheless, we decline to dispose of this appeal on waiver grounds. The district court has made no findings of frivolousness or waiver. Thus, we have exercised this court's jurisdiction to hear this timely filed *Forsyth* appeal. The procedural history of this case, however, compels us to reiterate that the district court has discretion "to cut off motions for summary judgment, even those which may challenge the plaintiff's right to go to trial on the basis of an absolute or qualified immunity." *Kennedy,* 797 F.2d at 301.

### III

Officer Currie is not entitled to qualified immunity from liability in connection with the shooting of Jerome Yates. The district court's denial of defendant's motion for summary judgment is therefore AFFIRMED.

SUHRHEINRICH, Circuit Judge, concurring.

I concur in the result reached in this case but write separately because I disagree with the majority's reasoning on the qualified immunity issue. The majority states that "[i]t was not 'objectively reasonable' for Currie to enter a dark hallway at 2:45 a.m. without identifying himself as a police officer, without shining a flashlight, and without wearing his hat." From these facts the majority concludes that "because the right Officer Currie is alleged to have violated was clearly established, and because Officer Currie's actions preceding the shooting were not those of an objectively reasonable police officer, we conclude that qualified immunity is not appropriate."

First, the majority neglects to include that in addition to receiving a call regarding a disturbance on the street in front of 1370 E. 91st Street, and upon arrival, hearing shouting and threatening language coming from inside the house; the officers observed a male break into and enter the house. The officers ran up the steps behind the male. Officer Currie's partner returned to the police car to call for a backup, and Officer Currie entered the hallway. Under this more complete set of facts I am not so sure that it can be concluded as a matter of law that the officer's actions were "not those of an objectively reasonable police officer" since they might have been justified as a "hot pursuit" exception to the warrant requirement and were therefore not in violation of law at all even if the officer's beliefs were mistaken.

Secondly, and more importantly, I believe the majority errs in lumping together conduct which was allegedly a fourth amendment violation for a warrantless search, which is not an issue in this case; with conduct giving rise to a fourth amendment excessive force claim, which is at issue. I do not think it automatically follows that even if an officer's conduct was legally objectively unreasonable with respect to a search, he cannot under any circumstances acquire qualified immunity for a subsequent constitutional violation.

This having been said, I agree that Officer Currie was not entitled to qualified immunity on the excessive force claim because I believe generally, and in this case as well, that qualified immunity is not available in excessive force cases. It is well-established, and it was when the incident in question occurred, that an officer's use of excessive force may rise to the level of an actionable constitutional deprivation. *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). Thus, "[t]he only knowledge that the officer[ ] needed was the knowledge that excessive force

was not permitted." *Stickney v. Trikes*, 909 F.2d 1485 (6th Cir.1990).

It seems to this writer that qualified immunity has no relevance unless there is excessive force, for if there is no excessive force, the officer acted in an objectively reasonable manner under the circumstances and there is no constitutional violation. It also seems that once you have determined the need for the defense of excessive force, it seems as a matter of law that the officer has acted unreasonably; and has violated clearly established law. This is not to say that qualified immunity will never be available under any circumstances in excessive force cases; and in fact, the Supreme Court has intimated that such a defense may in some instances be available.[1] For the most part, however, because an officer is equipped with all the knowledge he needs regarding the use of excessive force, the only determination left to be made is whether the conduct was excessive under the circumstances.

JOINER, Senior District Judge, concurring.

I concur, but would hold that the failure to raise the question of qualified immunity until two weeks before trial was scheduled to begin was clearly calculated to delay the trial and therefore waived the right to appeal. I do not believe that the Supreme Court would allow the procedure outlined in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), which was designed to obtain an early determination of the issue of qualified immunity, to be turned into a vehicle of delay as a result of *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). I believe that the theory of *Kennedy v. City of Cleveland*, 797 F.2d 297 (6th Cir.1986), *cert. denied sub nom. Hanton v. Kennedy*, 479 U.S. 1103, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987), and the thoughtful discussion of this problem by Judge Easter-

---

1. *See Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 1873 n. 12, 104 L.Ed.2d 443 (1989) ("Similarly, the officer's *objective* 'good faith'—that is, whether he could reasonably have believed that the force used did not violate the fourth amendment—may be relevant to the availability of the qualified immunity defense to monetary liability under § 1983"). As noted by the majority, the Supreme Court did not address the issue, however, since the defense had not been raised in that case.

brook in *Apostol v. Gallion,* 870 F.2d 1335 (7th Cir.1989), and *Abel v. Miller,* 904 F.2d 394 (7th Cir.1990), support this result.