986 F.2d 1421
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Darrell S. JONES, Plaintiff-Appellant,
v.
CITY OF UPPER ARLINGTON, Paul Schaumburg, and Michael
Nagode, Defendants-Appellees
 No. 92-3154.
 United States Court of Appeals, Sixth Circuit.
 Feb. 19, 1993.
 
 Before MERRITT, Chief Judge, RALPH B. GUY, Jr. and RYAN, Circuit Judges.
 MERRITT, Chief Judge.
 
 
 1
 Plaintiff Darrell Jones appeals the district court's grant of summary judgment in favor of defendant police officers Paul Schaumburg and Michael Nagode on the basis of qualified immunity and the court's subsequent sua sponte extension of the summary judgment to defendant City of Upper Arlington, Ohio, in a nunc pro tunc order. For the reasons that follow, we affirm the district court's grant of qualified immunity to the defendant police officers and remand the case for further clarification of the court's order with respect to the defendant City.
 
 
 2
 * On the night of March 26, 1990, the plaintiff, Darrell Jones, and an acquaintance, third party defendant Victor Hedgecock, visited a number of bars in the Columbus, Ohio, area. At approximately 2:30 a.m., after leaving the last of the bars, they got into Hedgecock's car. Both plaintiff and Hedgecock were intoxicated, and as Hedgecock began driving, plaintiff noticed that he was slurring his speech and behaving erratically. Hedgecock sideswiped a truck and plaintiff asked him to pull over. Hedgecock refused.
 
 
 3
 Just before the sideswipe, plaintiff noticed that they had driven past an Upper Arlington police car in the parking lot of a gas station. The police officer in the car, defendant Paul Schaumburg, was conducting routine traffic surveillance at the time, and decided to follow Hedgecock's car. When the police car got behind them, plaintiff again asked Hedgecock to pull over and Hedgecock again refused. Hedgecock then pulled off of the main road onto a side street and began to accelerate away from the police car. At this point Officer Schaumburg turned on his overhead beacons.
 
 
 4
 After a high-speed chase through several side streets and then back onto the main road, Hedgecock turned into a convenience store parking lot at such a high speed that his Cadillac had only two wheels on the ground. Upon entering the convenience store lot, Hedgecock's car collided with a police canine van that had been alerted to the scene by Officer Schaumburg.
 
 
 5
 After everything had settled, Officer Schaumburg approached Hedgecock's car and ordered plaintiff and Hedgecock to put their hands on the ceiling of the car. Before plaintiff had fully complied with this order, Hedgecock jumped from the car and fired at the officer who drove the canine van, hitting him in the left forearm. By that time there were three police officers on the scene (one of whom was defendant Officer Michael Nagode), and after Hedgecock fired they returned fire, together firing twenty-three rounds. These shots struck and wounded plaintiff and Hedgecock twice each. During all this time plaintiff remained in the passenger seat of the car.
 
 
 6
 After the shooting stopped Officer Nagode pulled plaintiff from the car. Officer Nagode put his foot on the back of plaintiff's neck to hold him down as he handcuffed him. When the emergency squad arrived it found that plaintiff had suffered bullet wounds to the abdomen and shoulder. The police handcuffed plaintiff to a gurney and the emergency squad took him to a local emergency room where he was operated upon.
 
 
 7
 Both sides agree that plaintiff had no knowledge that Hedgecock possessed a gun. Plaintiff was unarmed, cooperated with the police officers' commands, had no part in the assault on the police officer and was never charged with a crime in this matter.
 
 
 8
 Plaintiff filed a three-count complaint against Officers Schaumburg and Nagode in their individual and official capacities, and against the City of Upper Arlington, asserting causes of action under 42 U.S.C. § 1983 and assault and battery and false arrest under Ohio law. The defendants filed an answer and added Hedgecock as a third-party defendant. The defendant officers then filed a motion for summary judgment on the basis of qualified immunity, and moved for a stay of all discovery pending the outcome of the summary judgment motion. The officers withdrew the motion to stay discovery when the parties agreed that plaintiff would conduct no discovery on the unconstitutional policy claim against the city pending the summary judgment ruling.
 
 
 9
 The district court granted the officers' motion for summary judgment in an order dated November 27, 1991. On February 6, 1992 the court issued a nunc pro tunc order sua sponte "to correct a clerical omission in the record." The court stated that "[t]he record should have contained a final judgment entry dated the same day as the date of issuance of the Order." The court thus entered final judgment in favor of the defendants which was retroactive to November 27, 1991.
 
 
 10
 On appeal plaintiff challenges the district court's grant of summary judgment to the defendant officers on the basis of qualified immunity and claims the officers did not have sufficient probable cause to arrest him and used excessive force under the circumstances. He also claims that the district court's sua sponte extension of its summary judgment ruling to include the City of Upper Arlington was reversible error. Finally, plaintiff challenges the district court's refusal to consider the affidavits of two eyewitnesses to the incident whose statements he says would have supported his claims.
 
 II
 
 11
 We first consider whether the district court erred in granting summary judgment in favor of the defendant officers on the basis of qualified immunity. Qualified immunity raises an issue of law which we review under a de novo standard. Yates v. City of Cleveland, 941 F.2d 444, 446 (6th Cir.1991). "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In Anderson v. Creighton, 483 U.S. 635 (1987), the Supreme Court further defined the standard for qualified immunity:
 
 
 12
 [O]ur cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.
 
 
 13
 Id. at 640.
 
 
 14
 The relevant inquiry focuses on whether, under the circumstances of this case, the right of the plaintiff not to be fired upon was clearly established. At the time of the shooting, it was clearly established that a criminal suspect "ha[s] a right not to be shot unless he was perceived to pose a threat to the pursuing officers or to others[.]" Robinson v. Bibb, 840 F.2d 349, 351 (6th Cir.1988) (relying on Garner v. Memphis Police Dep't, 710 F.2d 240, 246 (6th Cir.1983), aff'd and rem'd sub nom Tennessee v. Garner, 471 U.S. 1 (1985)). Thus, we must determine whether an objectively reasonable officer would have perceived plaintiff as posing a threat under the circumstances.
 
 
 15
 In ruling on the propriety of a summary judgment grant, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Here this means that we accept plaintiff's claims that the defendant officers shot him intentionally after he cooperated with their command to put his hands on the ceiling of the car.
 
 
 16
 Accepting plaintiff's version of the facts, a reasonable officer could easily have perceived him as a threat under the circumstances. Plaintiff was in the car that sideswiped a truck and then sped away from Officer Schaumberg. After a high speed chase, the car careened on two wheels into a convenience store parking lot and slammed into a police canine van. As the officers approached the car, instructing Hedgecock and plaintiff to place their hands on the ceiling of the car, Hedgecock jumped from the car and fired on a police officer. Although we know with the benefit of hindsight that plaintiff was unarmed and probably posed no threat, at the time of the incident he appeared to be Hedgecock's confederate. The officers were forced to respond to Hedgecock's gunfire immediately in the middle of the night, and in doing so, they assumed, not unreasonably, that plaintiff too posed a threat.
 
 
 17
 Under the exigencies of these circumstances, the law regarding what is an excessive use of force was not clearly established. While a court decision addressing the exact factual situation an officer encounters is not necessary to "clearly establish" the law, the circumstances of this case are such that "in light of pre-existing law" the unlawfulness of shooting the plaintiff would not have been apparent to a reasonable officer. The officers were required to know that they could not shoot a suspect who posed no threat to themselves or others. Plaintiff appeared to be a confederate of a person who had opened fire on the officers. Under the circumstances of this case, a reasonable officer could have perceived plaintiff as threatening.
 
 
 18
 We find that the law regarding the proper use of force under the circumstances of this case did not clearly proscribe the officers' conduct. For this reason, we affirm the district court's grant of summary judgment for the officers on the basis of qualified immunity.
 
 III
 
 19
 We now address the district court's extension of the summary judgment to the defendant City in a retroactive nunc pro tunc order. In its entirety, the district court's February 6, 1992 order reads:
 
 
 20
 This matter comes before the Court sua sponte to correct a clerical omission in the record. Fed.R.Civ.P. 60(a).
 
 
 21
 This case was dismissed in its entirety on November 27, 1991, pursuant to the grant of summary judgment with respect to the federal claims in the Defendants' favor. In addition, the remaining state claims were dismissed without prejudice as the Court declined to exercise jurisdiction. The record should have contained a final judgment entry dated the same day as the date of issuance of the Order.
 
 
 22
 The Court hereby ORDERS AND DIRECTS the Clerk of Court to enter a final judgment entry in this matter nunc pro tunc, the date of origination to be November 27, 1991.
 
 
 23
 (App. 32).
 
 
 24
 The parties tell us that the effect of this order was to extend the summary judgment the court granted in favor of the defendant officers to the defendant city. Plaintiff argues this is improper because the officers moved for summary judgment on the basis of qualified immunity, a defense that does not apply to municipalities. Defendant claims that the real basis for the summary judgment in favor of the officers was that the court found that there was no violation of plaintiff's constitutional rights. With no constitutional violation, defendant argues, the city cannot be held liable and thus extension of the summary judgment to the city is proper.
 
 
 25
 We fail to see support for either of these positions in the nunc pro tunc order. Although we assume the parties are correct in reading the order to dismiss the claims against the City of Upper Arlington, the order does not mention the City by name and is not clear about how it affects plaintiff's claims against the City. Even if we accept the parties' reading of the order, it provides no explanation of why the district court dismissed the claims against the City. If, as defendant argues, the court meant to dismiss the claims against the City because it found no violation of plaintiff's constitutional rights, the order does not explain how the court reaches this conclusion.
 
 
 26
 We do not reach the question of whether summary judgment in favor of the defendant city was proper. Because the nunc pro tunc order is unclear as to what the district court intended to do and why it intended to do it, we remand the case for further proceedings.
 
 IV
 
 27
 Finally, we address plaintiff's claim that the district court erred in refusing to consider the affidavits of two eyewitnesses to the shootout. Plaintiff proffered the affidavits of Donald and Zharon Van Meter, who viewed the chase, the crash and the shootout from their car as they stopped for a red light. The Van Meters' affidavits were sworn on September 5, 1991, almost a year and a half after the night of the shootout, five months after the defendant officers' motion for summary judgment and three months after the plaintiff's deposition. The Van Meters' testimony generally supported plaintiff's version of the facts, but contradicted plaintiff's deposition testimony in several respects. The district court refused to consider the affidavits because it found that plaintiff was attempting to use them to rehabilitate his own damaging deposition testimony and create an issue of fact after the defendants filed for summary judgment. Even if the district court had erred in refusing to consider the affidavits, it then accepted plaintiff's version of the facts for the purposes of the summary judgment motion so any error would have been harmless.
 
 
 28
 Accordingly, we affirm in part and reverse in part and remand the case for further proceedings concerning the plaintiff's rights against the municipal defendant.