**Chad Timothy DICKERSON and Deon Denay Dickerson, a minor, by and through her mother and legal guardian, Sharon Dale Stephens, Plaintiffs,**

v.

**Cory D. McCLELLAN and Charles L. (Lonnie) Stevens, individually and in their official capacities as police officers for the Metropolitan Government of Nashville and Davidson County, Tennessee and the Tennessee and the Metropolitan Government of Nashville and Davidson County, Tennessee, Defendants.**

No. 3:93–0084.

United States District Court,
M.D. Tennessee,
Nashville Division.

Feb. 17, 1994.

Thomas H. Peebles, III, Jeffrey Zager, Trabue, Sturdivant & DeWitt, Nashville, TN, for plaintiffs.

James Lawrence Charles, Patricia Jean Cottrell, E. Joseph Fitzpatrick, Jr., Metropolitan Legal Dept., Nashville, TN, for defendants.

## MEMORANDUM

WISEMAN, District Judge.

Before the court is the question of whether a district court may certify an interlocutory appeal under *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985), as frivolous and thereby retain jurisdiction to proceed to trial. This court, answering that question in the affirmative, is then presented with the question of what standard to apply to determine frivolousness. The appropriate standard is taken to be whether disputes clearly exist with regard to material facts on which the qualified immunity defense is based or whether, on the undisputed facts, qualified immunity is clearly unjustified. Applying this standard to the case at hand, the defendants' interlocutory appeal is found to be frivolous.

### I

The underlying facts of this case have been previously detailed. *See* this court's Mem. of Jan. 12, 1994, at 1–3. Briefly stated, early in the morning on February 1, 1992, Officer Cory D. McClellan and Sergeant Charles L. Stevens (the "officers" or the "officer defendants") responded to a "shots fired" call on Harlin Drive in Nashville. On arrival at the general vicinity of the supposed shots, the officer defendants were directed to the home of Mr. Joel William Dickerson. The officers entered the porch area of Mr. Dickerson's home and heard a loud voice coming from the back of the house. Finding the primary door to the residence open and the storm door closed but unlocked, the officers entered Mr. Dickerson's home without knocking or announcing their presence. The officers had heard no shots coming from Mr. Dickerson's home and had no specific information that anyone was inside being held at bay.

Mr. Dickerson apparently heard the entry of someone into his home and headed toward the front door, carrying a pistol according to the officers. Hearing Mr. Dickerson coming their way, Officer McClellan retreated out the front door and Sergeant Stevens took up a position which placed him behind Mr. Dickerson as he passed. The officers stated that Mr. Dickerson muttered threatening words and then aimed a gun at Officer McClellan, at which point the officers began firing at Mr. Dickerson. A witness across the street stated that she never saw Mr. Dickerson aim a gun at Officer McClellan before the officers' volley of shots began. In all, Mr. Dickerson suffered nine gunshot wounds, from which he died. No command or warning was given to Mr. Dickerson before the firing began, no verbal identification of the officers was made, and it is unclear whether Mr. Dickerson was able to identify the police officers visually.

On January, 28, 1993, the children of Mr. Dickerson filed a lawsuit against the officer defendants and the Metropolitan Police Department and Government of Nashville and Davidson County. Among plaintiffs' claims was a cause of action under 42 U.S.C. § 1983 alleging that the officer defendants had violated Mr. Dickerson's Fourth Amendment rights. The officer defendants filed a motion for summary judgment, claiming among other things that qualified immunity protected their actions from suit.

On January 12, 1994, this motion was denied. Two conclusions precluded granting qualified immunity. First, the actions of the officers in entering the home of Mr. Dickerson were objectively unreasonable in light of the clearly established law regarding the knock and announce rule and its exceptions. Second, material factual disputes existed regarding the reasonableness of using lethal force against Mr. Dickerson. In the order denying qualified immunity, the court granted permission to the officer defendants to seek an interlocutory appeal under *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), if they so chose. The officer defendants promptly filed a notice of appeal. Plaintiffs responded with a motion to certify this appeal as frivolous. A hearing on this motion was held on February 14, 1994.

## II

Plaintiffs' motion raises two questions: (1) Within the Sixth Circuit, may a district court certify a *Forsyth* appeal as frivolous and thereby retain jurisdiction over the case? (2) If so, what is the standard for determining the frivolousness of such an appeal? The first question has been clearly answered by the Sixth Circuit; the second question has not.

### A. Power to Certify a Forsyth Appeal as Frivolous

■ In 1985, the Supreme Court ruled that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). When such a *"Forsyth* appeal" is taken, the district court is divested of jurisdiction and proceedings are stayed pending a decision by the appellate court. *See Stewart v. Donges,* 915 F.2d 572, 576 (10th Cir.1990); *Apostol v. Gallion,* 870 F.2d 1335, 1338 (7th Cir.1989).

In 1986, the Sixth Circuit ruled that *Forsyth* appeals are "subject to the same rules of waiver and procedural default as have been traditionally applied to other cases." *Kennedy v. City of Cleveland,* 797 F.2d 297, 300 (6th Cir.1986), *cert. denied,* 479 U.S. 1103, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987). The impetus behind this ruling was the realization that *Forsyth* appeals "are of course subject to abuse. Even when employed in good faith, [such appeals] are bound to create delay and inconvenience both to the plaintiff and to the court." *Id.*[1] Accordingly, a district court may impose reasonable time limits within which a qualified immunity defense must be asserted and denial thereof appealed. *See id.* at 300–01. "The quid pro quo is

obvious: in exchange for the defendant's right to interrupt the judicial process, the court may expect a reasonable modicum of diligence in the exercise of that right." *Id.* at 301.

In 1989, the Seventh Circuit ruled that a district court retains jurisdiction over a § 1983 case when a *Forsyth* appeal is frivolous. *Apostol v. Gallion,* 870 F.2d 1335, 1339 (7th Cir.1989). The Seventh Circuit, like the Sixth Circuit in *Kennedy,* was moved to this action by the potential for abuse and needless delay inherent in the *Forsyth* doctrine. *See id.* at 1338–39. The *Apostol* court urged district courts not to sit idly by as a frivolous appeal goes up, but rather to "certify to the court of appeals that the appeal is frivolous and get on with the trial." *Id.* at 1339. This power—although it should be used with restraint—should be used when appropriate to "cut[ ] short the deleterious effects of unfounded delays." *Id.*

In 1991, the Sixth Circuit adopted the reasoning of the Seventh Circuit in the *Apostol* case. *See Yates v. City of Cleveland,* 941 F.2d 444, 448–49 (6th Cir.1991); *see also Chuman v. Wright,* 960 F.2d 104, 105 (9th Cir.1992) (agreeing with *Apostol* and adopting similar reasoning from earlier Ninth Circuit double jeopardy case); *Stewart v. Donges,* 915 F.2d 572, 577 (10th Cir.1990) (adopting the *Apostol* reasoning). The *Yates* court made clear that a *Forsyth* appeal would not be considered where a district court has explicitly found the appeal to have been waived or to be frivolous (neither of which the district court had done in *Yates* ). *See id.* at 449. Thus, after *Yates,* a double limitation applies to *Forsyth* appeals within the Sixth Circuit: they must be timely and they must not be frivolous.

This case law shows that the circuit courts, including the Sixth Circuit, have acted fairly quickly to head off the potential dilatory effects that could follow from *Mitchell v.*

---

1. These cautionary words by the Sixth Circuit largely echo the concerns expressed by Justice Brennan in the *Forsyth* decision. *See Forsyth,* 472 U.S. at 543–56, 105 S.Ct. at 2825–31 (Brennan, J., concurring in part and dissenting in part). Justice Brennan stated, for example:

    I fear that today's decision will give government officials a potent weapon to use against

plaintiffs, delaying litigation endlessly with interlocutory appeals. The Court's decision today will result in denial of full and speedy justice to those plaintiffs with strong claims on the merits and a relentless and unnecessary increase in the caseload of appellate courts. *Id.* 472 U.S. at 556, 105 S.Ct. at 2831.

*Forsyth.* By imposing forfeiture and frivolousness restrictions on *Forsyth* appeals, the circuits have put in place mechanisms for weeding out the well-intentioned and warranted appeals from the ill-intentioned and unwarranted appeals. The result is a preservation of the primary purpose behind *Forsyth* appeals—providing defendants a second look at their qualified immunity claims in close cases prior to trial—and an avoidance of the needless delay and burdening of dockets associated with unwarranted interlocutory appeals.

### B. *Standard of Frivolousness*

■ Having concluded that *Forsyth* appeals may be dismissed as frivolous in this circuit, this court is confronted with the question of how to judge such frivolousness?[2] The Sixth Circuit has not directly answered this question, nor has any other circuit court. The Seventh Circuit has provided general guidelines to district courts within its jurisdiction,[3] but as is their nature, general guides often offer little aid in specific cases.

It appears that only one court has provided a detailed description of the standard of frivolousness as applied to an appeal from a denial of qualified immunity. After denying defendant's claim of qualified immunity, the District of New Mexico tallied the numerous factual disputes existing on issues material to the qualified immunity defense and concluded that an appeal of the earlier denial would be "baseless and frivolous" in light of the many material facts in dispute.[4] *Heller v. Woodward,* 735 F.Supp. 996, 998–99 (D.N.M. 1990). Therefore, that court based its frivolousness judgment on the existence of genuine disputes of material facts. *Cf. Bean v. City of Buffalo,* 822 F.Supp. 1016, 1019 (W.D.N.Y.1993) (applying similar test even

though Second Circuit has not explicitly adopted *Apostol* rule).

To find another possibly appropriate standard of frivolousness, one could analogize to double jeopardy cases, as "interlocutory double jeopardy cases . . . so closely parallel to *Forsyth* appeals that the principles are freely transferable." *Apostol,* 870 F.2d at 1339; *see also Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985) (comparing qualified immunity and double jeopardy cases); *Chuman v. Wright,* 960 F.2d 104, 105 (9th Cir.1992) (same). This is what the Eastern District of Virginia did when considering an interlocutory appeal of a denial of sovereign immunity. *See Eckert Int'l, Inc. v. Government of Sovereign Democratic Republic of Fiji,* 834 F.Supp. 167, 174 & n. 14 (E.D.Va.1993). Drawing on double jeopardy jurisprudence, that court held that an interlocutory appeal of a denial of sovereign immunity was frivolous only if it was "both meritless and substantively inappropriate." *Id.* As with the Seventh Circuit's recommendations, this test is somewhat vague.

The better approach would seem to be that taken by the District of New Mexico, particularly given Sixth Circuit law on qualified immunity. Denials of qualified immunity at the summary judgment stage are to be affirmed either when there is a genuine dispute over material facts on which the qualified immunity defense is based or when there is no dispute that the defendants did violate clearly established law:

> "[S]ummary judgment would not be appropriate if there is a factual dispute (i.e., a genuine issue of material fact) involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights. . . .

---

**2.** There is no question here of waiver. Plaintiffs concede that the officer defendants have diligently pursued their qualified immunity defense. The only question is whether a *Forsyth* appeal would be frivolous in this case.

**3.** The certification of frivolousness should provide a reasoned explanation, and an appeal is frivolous if it is "a sham," "baseless," or "unfounded." *Apostol v. Gallion,* 870 F.2d 1335, 1339 (7th Cir.1989). The direction to provide a

reasoned explanation paired with the vague descriptions indicate that the Seventh Circuit saw frivolousness as a case-specific or claim-specific inquiry.

**4.** The court had found the relevant law to have been clearly established; all that was at issue was whether this law had been violated. *See Heller v. Woodward,* 735 F.Supp. 996, 998 (D.N.M.1990).

Summary judgment also should be denied if the undisputed facts show that the defendant's conduct did indeed violate clearly established rights. In either event, the case will then proceed to trial, unless the defendant takes a successful interlocutory appeal on the issue of qualified immunity."

*Rich v. City of Mayfield Heights,* 955 F.2d 1092, 1095 (6th Cir.1992) (quoting *Poe v. Haydon,* 853 F.2d 418, 426 (6th Cir.1988). The Sixth Circuit "has not hesitated to reverse dismissals (or affirm denials of motions for dismissal) of actions before trial where [it] has found a genuine issue of material fact relating to qualified immunity in the record." *Lavado v. Keohane,* 992 F.2d 601, 611 (6th Cir.1993) (collecting cases).

It follows from this case law that if in the district court's judgment there are true factual disputes that must be resolved at trial, or if there is no genuine dispute about the inappropriateness of qualified immunity, a *Forsyth* appeal should be certified as frivolous. However, if the district court cannot say that the law is "clearly established" within the definition of that phrase or that the undisputed actions of the officers were unreasonable under clearly established law, then the appeal is not frivolous. It is only if there is no dispute about the actions of the officers and these actions were unreasonable under the established law, or if there is a dispute about the actions of the officers and these disputes go the reasonableness of the actions, that the appeal should be deemed frivolous in a § 1983 case based on Fourth Amendment violations. In the former case, the appellate court can provide valuable guidance to the district court in judging the status of the law or actions of the defendant. In the latter case, the appellate court can provide no assistance simply because crucial facts remain to be decided, and such factfinding is the province of the trial judge or jury. *See Brandenburg v. Cureton,* 882 F.2d 211, 215–16 (6th Cir.1989) ("This court ultimately decides the law to be applied. In this case, however, the jury becomes the final arbiter of appellant Sharp's claim of immunity, since the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury.").

Strong support for this approach is found within *Mitchell v. Forsyth.* The Court explicitly noted that *Forsyth* appeals should involve only questions of law:

All [the appellate court] need determine is a question of law: whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or, in cases where the district court has denied summary judgment for the defendant on the ground that even under the defendant's version of the facts the defendant's conduct violated clearly established law, whether the law clearly proscribed the actions the defendant claims he took.

*Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985). The Court continued: "We emphasize at this point that the appealable issue is a purely legal one: whether the facts alleged (by the plaintiff, or, in some cases, the defendant) support a claim of violation of clearly established law." *Id.* at 528 n. 9, 105 S.Ct. at 2816 n. 9. Hence, the Court's granting of a right to an interlocutory appeal on the qualified immunity issue was premised on the assumption that such appeals would involve only legal questions based on undisputed material facts.

## C. *Frivolousness of the Present Appeal*

■ Applying the above-stated standard to the present case, this court has no doubt that the officer defendants' appeal is frivolous. The law with respect to the officers' alleged Fourth Amendment violations was clearly established in the Sixth Circuit at the time of the plaintiffs' father's death: (1) police officers were not to enter an occupied residence without knocking and announcing their presence unless holding a justified belief that someone inside was in danger; (2) police officers were only to use that degree of force reasonably necessary to apprehend a suspect. It is undisputed that the officers violated the knock and announce rule, and moreover, this violation was not based on a justified belief of imminent danger to an occupant. A reasonable officer in the same situation would not have acted as the officer defendants did. Additionally, there is a genuine dispute over whether Mr. Dickerson

presented the officers with a threat sufficient to justify the use of lethal force; if not, the actions of the officers were unreasonable. *See* Mem. of Jan. 12, 1994, at 5–11. Both conclusions concerning possible violations of the Fourth Amendment militate against interlocutory appeal.

The officer defendants argue that in fact their entry of Mr. Dickerson's home would have appeared justified to an objectively reasonable officer on the night in question. According to the officers, the court has misconstrued the proper standard of judgment of the officers' actions by engaging in cool hindsight in reaching its decision, ignoring the difficulties of police work. Certainly "[p]olice officers have some tough decisions to make that often have to be made quickly and under adverse circumstances. They are entitled to societal as well as judicial protection from personally being held liable for every wrong decision they make under such circumstances." *Johnson v. Estate of Laccheo,* 935 F.2d 109, 111 n. 1 (6th Cir.1991) (Guy, J., dissenting). But in some cases these tough decisions must be second guessed, for not every *post hoc* explanation, no matter how plausible or understandable, can justify every officer's behavior. The best a court can do is attempt to understand the situation as seen by the police and then apply standards of objective reasonableness within these confines.[5]

Even assuming all facts as stated by the officers to be true, there is simply not sufficient evidence to justify surreptitious entry of the home. Acting on a hunch that someone could be in danger and then taking actions that could place themselves and anyone inside in greater danger are not objectively reasonable behaviors by an officer. An objectively reasonable officer simply would not have entered the house on the slight information possessed at the time—given the knock and announce rule and the limited exceptions to it and given concomitant established procedures. *See* Aff. of Leonard Territo. Even if some other officers might act as the officer defendants did, this certainly does not make the actions objectively reasonable. Neither does hypothesizing alternative tragic scenarios make the officer defendants' behavior more justified,[6] although it does illustrate the difficult dilemmas officers may face.

The defendants further dispute this court's finding that there was an "utter lack of investigation" prior to entry of the Dickerson residence, and in support thereof cite statements by Sharon Sanford, a witness across the street, to the effect that the officers were cautious and inquisitive as they approached the residence. *See* Dep. of Sharon Sanford of Sept. 21, 1993, at 69. Regardless of the very slight evidence of investigation that even this testimony provides, the selective citation of Ms. Sanford's deposition ignores Ms. Sanford's other testimony that the officers proceeded directly to the door and entered without any significant hesitation. *Id.* at 48. When there are two officers on the scene and *both* officers enter the *front* door of a residence without any assessment of the situation by either officer besides that which occurs in the short walk to the house, then insufficient investigatory tactics have been undertaken. This conclusion follows not from "personal notions of proper police pro-

---

5. The defendants accuse the court of substituting its inferences for those made by the police on the night in question with respect to observation of a taut phone line. *See* Mem. of Law in Supp. of Defs' Opp'n to Pls.' Mot. to Certify Appeal as Frivolous, at 13. First, it is not clear what significance, if any, the officers gave to the phone cord. The court was merely pointing out that, under the circumstances, it would have been reasonable to conclude that the loud voice was directed at the phone and not at a hostage. Second, the court was not substituting its judgment for that of the officers but was indicating that a reasonable inference, and perhaps one held by the officers at the time, was that the loud voice was directed at the phone. Accordingly, to attempt to justify entry of the residence by reference to the loud voice alone would ignore the entire context on that night—that being the appropriate context for judgment. Third, the court would simply point out that of course not all hindsight is barred in these cases; rather, only antiseptic hindsight. Judging the weight to be assigned to evidence is entirely appropriate, not to mention inevitable.

6. The defense states that "[c]ertainly had someone been lying in the house bleeding to death and the officers did not enter the house to investigate they would find themselves defendants in a civil suit as well." Mem. of Law. in Supp. of Defs.' Opp'n to Pls.' Mot. to Certify Appeal as Frivolous, at 13.

cedure," *Smith v. Freland,* 954 F.2d 343, 347 (6th Cir.1992) as the defense suggests, but rather from expert opinion on proper police tactics. *See* Aff. of Leonard Territo. The officers held at best a hunch that someone might be in danger inside the residence.[7]

Finally, the officer defendants argue that there was no bright-line rule in existence in February of 1992 to tell them when an unannounced entry was justified or not; accordingly, they argue the law was not clearly established. Of course, the law in an area need not consist of bright-line rules to be clearly established. Such a requirement would insulate any abuse of discretion from suit simply because the law in the area does not lend itself to bright-line rules. Nevertheless, the law was quite clear as to when an emergency entry was justified: (1) when those inside already know of the officers' authority and purpose; (2) when the officers hold a justified belief that someone inside is in imminent peril; or (3) when the officers hold a justified belief that those inside know the officers' presence and are seeking to escape or destroy evidence. *See Hall v. Shipley,* 932 F.2d 1147, 1152 (6th Cir.1991). The officers may not have been specifically aware of this law, but a reasonable officer would have been. These exceptions were not newly created in 1991; the Sixth Circuit merely reiterated in 1991 its earlier holding from 1981. *See id.; United States v. Francis,* 646 F.2d 251, 255 (6th Cir.1981).

With regard to the use of excessive force, this court indicated that the existence of plausible competing accounts of how the actual shooting occurred precludes a grant of summary judgment on qualified immunity grounds. Key factual disputes exist that must be resolved by the trier of fact. The officer defendants spend little time rebutting this conclusion.[8] Indeed, the court's conclusion is only bolstered by Ms. Sanford's sec-

ond deposition, wherein she reiterates her testimony that she never saw Mr. Dickerson aim any weapon at the officers prior to Mr. Dickerson's being shot. *See* Dep. of Sharon Sanford of Sept. 21, 1993, at 54. The jury will have to determine exactly what the sequence of events was on the morning of February 1, 1992 and then apply the law to these facts to determine whether the officers acted lawfully. In such a case, granting summary judgment on qualified immunity grounds is clearly inappropriate.

## III

For the reasons stated above, as well as for the reasons stated from the bench, the plaintiffs' motion will be granted in an accompanying Order. The officer defendants' notice of appeal shall be dismissed, and the case shall proceed to trial as previously scheduled.

## ORDER

For the reasons stated from the bench and in the accompanying Memorandum, the plaintiffs' motion to certify defendants' interlocutory appeal as frivolous is hereby GRANTED. The notice of appeal is dismissed, and the previously scheduled trial date remains valid.

---

7. The defense's citation of *O'Toole v. Kalmar,* 1990 WL 19542, at *9 (N.D.Ill. Feb. 23, 1990), is wholly unavailing. While the *Kalmar* court did state that a lack of a plan for taking custody of a suspect was not grounds for denying qualified immunity, that court was clearly focused only on whether the officer's use of force was reasonable once he had confronted a serious threat. The officer's culpability in failing to develop or carry out a better plan was not at stake. There are numerous other significant ways in which the *Kalmar* case differed from the present case.

8. Just as this court may not engage in unfettered *post hoc* criticism, neither may the defendants rely on information gathered after the fact to rationalize their use of force. *See* Mem. of Law in Supp. of Defs' Opp'n to Pls.' Mot. to Certify Appeal as Frivolous, at 15.